175 So.2d 316 (1965)
STATE of Louisiana, through the DEPARTMENT OF HIGHWAYS
v.
John Richard REUTER, Jr., et al.
No. 1746.
Court of Appeal of Louisiana, Fourth Circuit.
April 5, 1965.
Rehearing Denied June 7, 1965.
*317 D. Ross Banister, Norman L. Sisson and Brunswig Sholars, Baton Rouge, for plaintiff-appellee.
Reuter, Reuter & Schott, Arthur C. Reuter, New Orleans, for defendants-appellants.
*318 Before McBRIDE, SAMUEL and BARNETTE, JJ.
CHRIS T. BARNETTE, Judge pro tem.
The defendants have appealed from the judgment of the trial court awarding them $32,289.65 over and above the $30,465.00 deposited in the registry of the court by the plaintiff, the State of Louisiana, through the Department of Highways, for expropriation of two parcels of land out of a larger tract owned by defendants in the City of New Orleans.
The appellee answered the appeal and prayed for a reduction in the award. The appeal was lodged in this Court on November 13, 1964, the return date being November 16. Appellee's answer to the appeal filed December 22, 1964, was therefore not timely and cannot be considered. LSA-C.C.P. art. 2133. Appellee has vainly attempted to explain its tardiness in answering the appeal and argues that the provisions of Article 2133 are "directory" and that LSA-R.S. 48:441 et seq. provides a special procedure and that "cases brought thereunder are not subject to the general rules of the Code of Civil Procedure." Citing State Through Dept. of Highways v. Jackson Brewing Company, 146 So.2d 504 (La.App. 4th Cir. 1962). We fail to find in that case any statement by this Court which could be construed as holding as appellee contends. It is true that LSA-R.S. 48:441-48:460, added by Act 107 of 1954, sometimes referred to as the "quick-taking" statute, provides a special procedure differing in some significant respects from the general expropriation procedural laws, but there is nothing in the act changing the laws of appeal. The only reference to appeal is in LSA-R.S. 48:459 and provides:
"No appeal in any expropriation suit brought under these provisions shall operate to prevent or delay the vesting of title in the plaintiff."
Appellee's argument is without merit. LSA-C.C.P. art. 2133 is explicit that it must answer the appeal not later than fifteen days after the return day or the lodging of the record, whichever is later (in this case November 16, 1964), if it "desires to have the judgment modified, revised, or reversed in part * * *." (Emphasis added.) Therefore, assuming arguendo that appellee's tardy answer to the appeal might appear to have some merit, we are powerless to consider it. Accordingly, we limit our consideration to the question of increase of award and damages claimed by appellants. Bradford v. Patterson, 159 So.2d 342 (La.App.2d Cir. 1964); State Through Dept. of Highways v. Bjorkgren, 147 So.2d 905 (La.App. 1st Cir. 1962); State Through Dept. of Highways v. Chappell, 137 So.2d 432 (La.App.2d Cir. 1962); Rader v. Rader, 126 So.2d 189 (La.App.4th Cir. 1961), and cases there cited.
The taking of defendants' property under the provisions of LSA-R.S. 48:441-48:460 is made necessary in connection with the construction of a part of the national system of interstate and defense highways, more particularly Interstate 10. The construction plan calls for the main highway to cross defendants' property and for relocation of the Old Gentilly Highway presently running along the north boundary of the subject property. This relocation of that highway to provide an overpass over the main highway a short distance to the east of the subject property requires the taking of a strip across the top, or front, of the defendants' property over which an inclined approach to the overpass will be constructed. This approach will rise from an elevation of a few inches at the northwest corner of the remaining property to approximately three feet at the northeast corner. A section of the right-of-way map (prepared for the State of Louisiana Department of Highways), over which we have superimposed markings to show the defendants' property and the two parcels expropriated, is copied below.
*319 
*320 The able trial judge has so well stated the facts and issues that we adopt verbatim his "Findings of Fact and Reasons for Judgment" as our statement of the case:
"This case involves the expropriation of certain parcels of ground from the defendants by the State of Louisiana through the Department of Highways. Defendants were the owners of a tract of ground fronting on Old Gentilly Road and bounded in the rear by the right-of-way of the L & N Railroad. The subject property is a short distance east of the Industrial Canal. The property is zoned JIndustrial, and all of the appraisers for defendants and plaintiff conceded that the best and highest use of the property was for industrial usage.
"The property originally had a depth of approximately 450 feet from Old Gentilly Road to the right-of-way of the railroad and a width and front on Old Gentilly Road of approximately 175 feet, as will appear from the exhibits on file in the record. As will further appear from the maps and exhibits in the record, the Highway Department took the front portion of the property fronting on Old Gentilly Road containing 5,793 square feet and which is referred to as Parcel 14-2 on the various maps and exhibits. Additionally, the Highway Department took a parcel referred to as 14-3 on the various maps, located almost to the rear of the property, and which parcel contained 35,589 square feet. Additionally, there was a parcel which was not taken between the large parcel taken and the railroad track, containing 5,924 square feet, which all appraisers agreed was rendered worthless by the taking of Parcel 14-3, since there would be no ingress or egress to the parcel to the rear. There remained additionally in the possession and title of defendants a parcel consisting of 33,411 square feet, which defendants claim was damaged by the taking.
"The appraisers for the State of Louisiana and two appraisers for the defendants testified at length as to the value of the property and the question of damages, and there appears to have been some difference of opinion among the appraisers as to both value and damages.
"The qualifications of all appraisers on file in the record, indicate that they all were competent, experienced realtors, well qualified in appraisal work, and acquainted with property in the Gentilly area where the subject property is located. The defendant appraisers were Mr. Omar F. Kuebel and Mr. Stanley Lemarie. The experts for the State were Mr. L. X. Lamulle and Mr. E. A. Tharpe, Jr. Neither of the defendants' appraisers had ever been employed by or connected with either defendant previously. Both of the appraisers for the State testified that appraisal work for the State was their principal source of income. One of the State's appraisers had never bought or sold or brokered property in the local area as a realtor, nonetheless, he appeared to be a qualified appraiser.
"The appraisers for defendants appraised the entire property at $1.25 per square foot, both of them concurring in this appraisal and taking the position that the only proper method of appraisal of this tract was to appraise the entire tract as a whole and then to place a value on what was left to defendants after the taking. Mr. Lamulle stated that he appraised the entire tract at 75¢ per square foot, and further stated in his testimony that he arrived at this figure by appraising the front portion of the tract at 90$ per square foot and the rear portion of the tract at 60¢ per square foot, stating that the reason for his appraising the rear portion at 60¢ was that the rear *321 portion was low land which was under water. The testimony of Mr. Kuebel and Mr. Lemarie, who had visited the property on several occasions and walked over the entire property, together with the testimony of Mr. Reuter and by the various photographs introduced in evidence by them clearly proved that no part of the land was under water but to the contrary was high and dry. Mr. Lamulle admitted that he had never walked on the subject property. Mr. Lamulle's testimony as to the property being low and under water was given on the basis of pictures he took of a drainage ditch which was not located on the subject property. This Court finds as a fact that the subject property was well drained, suitable industrial property throughout its width and depth and usable as such, there being a drainage ditch located to the rear thereof which, while perhaps temporarily blocked by the improvements in progress, had served to drain this property and adjacent ones for many years. Mr. Lamulle further testified that he gave no weight or consideration to any increase in value over the past several years prior to the taking of the property due to the following factors: (1) the establishment of the NASA space program, (2) development of the tidewater channel, and (3) general development and increase in the Gentilly area. The appraisers for the defendants displayed adequately through sales of property over the past few years that there was a steady increase in property values throughout this entire area, and this Court feels that this factor must be taken into account. There was a paucity of directly adjoining comparables along Old Gentilly Road, for the obvious reason that the access thereto and the future plans thereof had been clouded and impeded by the very highway program which had been in progress and on the drawing boards for the past few years prior to the taking.
"Mr. Tharpe, the other appraiser for the State, testified that he appraised the property as a whole at 85¢ per square foot and that he preferred to do this because he conceded that the property should be appraised as a whole, as was contended by the appraisers for the defendants. However, Mr. Tharpe further testified that he valued the front portion of the property which remained in the title of defendants at $1.15 per square foot, having valued the rear portion at a lower figure because he felt the same was `low' property. Mr. Tharpe also admitted that he had never walked this property or personally inspected it and, as stated above, his conclusion that the rear portion was low was erroneous.
"The experts for defendants, Mr. Kuebel and Mr. Lemarie, testified at length as to their method of appraisal and their comparables. The Court was impressed by their knowledge of subject land and the entire area. Their valuation of $1.25 was based upon comparable sales, as well as upon the effect of the increased value attributable to the NASA space program, the tidewater channel, and other improvements in the area. To sum up the question of the value of the property, this Court finds that this property must be appraised as a whole and that the Highway Department's appraisers were in error in downgrading the appraisal because of an erroneous assumption that the property was under water in the rear. Taking the values assigned to the front of the property by the State's appraisers, we find as follows: Lamulle, 90¢; Tharpe, $1.15¢; average of State's appraisal, $1,025.
"While Mr. Tharpe states that he arrived at the $1.15 for the property left because of increased value created by the Highway Department's improvements, *322 this Court finds no reason to believe that these improvements will increase the value of defendants' remaining property, but rather, because of the structures and the raised grade in front of defendants' property, will tend to decrease it.
"It should be noted that there was a sale of approximately 45,000 square feet of land by the defendants to an adjoining property holder on February 2, 1960, almost three years prior to the taking, at a price of $1.00 per square foot, this sale having taken place prior to the announcement of the NASA Michoud program and prior to the general rise in price levels in the Gentilly area over the two and a half year period immediately preceding the taking. The appraisers for the State disregarded this sale for the reason that they contended that it was a `captive' sale, and they further implied that there was some question of whether or not this was an arm's length transaction, but the State produced no evidence to substantiate this contention, Mr. Reuter having testified in this matter that this was an arm's length transaction and a sale for cash consideration paid of $1.00 per square foot between himself and Mr. Fishman and the purchasers, whom he had seen approximately three or four times in his life and for whom he had handled two or three routine legal and notarial matters. This Court finds that this was an arm's length transaction and that this sale should be considered as a comparable, it having been held by the Supreme Court of Louisiana that purchases by adjoining property owners are acceptable comparables.
"The two appraisers for defendants appraised the value of the property taken at $1.25 for the reasons of their comparables and the increased values in the area. This Court believes that a fair value of the property taken by the Department of Highways from defendants would be $1.15 per square foot and that the Department of Highways should pay this amount for the property taken from the defendants, and should pay the same amount for the parcel in the rear, which all experts stated was rendered worthless by the taking.
"As to the question of damages, the appraisers for the State took the position that there was no damage to the remainder of defendants' property, consisting of the portion lying between the two parcels taken and containing 33,411 square feet. The Court cannot agree, and finds that there was damage to the property.
"The appraisers for the defendants testified as to the damage, and Mr. Kuebel testified that he found damage to the remaining property of 25¢ per square foot, assuming unimpeded free ingress and egress to the highway after the completion of the improvements and no loss of ingress or egress. If there were a loss of ingress and egress, Mr. Kuebel concluded that the damage to defendants' property would be 50¢ per square foot. Mr. Lemarie, the other expert for defendants, testified that in his opinion, taking into consideration all of the factors, the remainder of defendants' property was damaged to the extent of 62½¢ per square foot, he feeling that the ingress and egress was seriously impeded if not lost.
"The appraisers for defendants based their opinions that there was damage to the defendants' remaining property on the following factors:
"1. Loss of the railroad siding to the rear and the opportunity to establish a switch tract facility;
"2. Loss of assembly value, the defendants' parcel having been cut down from an 80,000 square foot tract to a *323 tract of approximately 33,000 square feet;
"3. The fact that whether or not ingress and egress was granted there would be a rise and an elevated roadway in front of the remaining property across the entire frontage of the remaining property and running up to an elevation of three feet at one end.
"Based upon these above factors, Mr. Kuebel felt that a damage of 25¢ per square foot had been suffered and Mr. Lemarie a damage of 62½ per square foot, with Mr. Kuebel stating that if there was any loss of ingress and egress he felt the damage to the remaining property would amount to 50¢ per square foot rather than 25¢.
"With respect to ingress and egress, the Highway Department produced an engineer who stated that in his opinion there could be vehicular ingress and egress from the remaining property, but stated further that this would be a matter entirely up to the City of New Orleans and to their safety engineers and traffic controllers, but that he felt, in view of the grade of the overpass which was being established, that there could be ingress and egress to the remainder of the property. The attorney for the Highway Department stated in open court that he was willing to state for the Department that if there was denial of ingress and egress later the defendants could assert an additional claim for damages therefor. In view of this expert testimony and the statement of the Highway Department attorney, this Court is not allowing any damages for loss of ingress and egress to the remainder of defendants' property, but the Court is of the opinion that defendants' remaining property is damaged to the extent of 25¢ per square foot by virtue of the loss of the railroad siding, the loss of assembly, and the elevated roadway in front of defendants' property, as well as being located at the foot of an overpass with the attendant problems. The model introduced by the Highway Department amply illustrates the factors discussed above, and this Court agrees with the experts for defendants that there is damage to the remaining property and fixes same at 25¢ per square foot, exclusive of any questions of ingress and egress, and believes that if the ingress and egress is lost as a matter of fact, defendants should be free to come in with a further claim."
We are in accord with the factual findings of the trial judge but are of the opinion that the question of additional damage to the property not taken, on account of loss of ingress and egress caused by the overpass approach, should not have been pretermitted or left for further action at a later date. There are numerous cases so holding and which hold also that the damage should be determined on the basis of facts existing at the time of trial. LSA-R.S. 48:451 and 48:453. The fact that the defendants might have elected to await completion of the project to apply for trial to determine damages under Section 451 does not preclude them from seeking such compensation by way of answer to the expropriation suit. State, Department of Highways v. Huson, 166 So.2d 3 (La.App.2d Cir. 1964), writs refused 246 La. 877, 168 So.2d 104 (1964); State, Department of Highways v. Brammer, 160 So.2d 355 (La.App. 3rd Cir. 1964); State Through Dept. of Highways v. Davis, 149 So.2d 164 (La.App. 3rd Cir. 1963); State Through Dept. of Highways v. Williams, 131 So.2d 600 (La.App. 3rd Cir. 1961). We will discuss the element of damage resulting from impairment or loss of access to Old Gentilly Road below, after disposing of the question of value of the property taken and the allowance therefor.
This is a factual question, State v. Tramuta, 234 La. 741, 101 So.2d 450 (1958), and hence the judgment of the trial court on this point should be accorded the same *324 weight as that given to its findings on any other fact.
We are dependent entirely on the testimony of the experts who have testified on this point. We recognize the elements of speculation, which of necessity bear upon the appraisal, and are of the opinion that there is no absolutely accurate formula by which the value of property can be determined with mathematical exactness. Therefore, any evaluation which the court places on property concerning which competent appraisers are not in full agreement is to a degree arbitrary. Unless it is evident that the trial court is unreasonably arbitrary or its evaluation is at great variance from the appraisal of the experts, we feel its judgment should not be disturbed. Since the appellee has failed to answer the appeal timely, the only plea for change in the judgment we can consider is that for an increase. The difference between $1.15 per square foot, as allowed by the court, and $1.25, contended for by appellants, where there are so many elements of speculation involved, does not leave much room for manifest error.
Any figure which we might find between $1.15 and $1.25 would, on its face, be arbitrary; and to allow $1.25 as appellants contend would be to disregard entirely the testimony of other qualified appraisers and the opinion of the trial judge. There is nothing in the record to justify our doing so. We therefore accept as just and reasonable the figure of $1.15 as found by the trial judge.
The testimony of Mr. Kuebel, defendants' expert appraiser, was well supported by many comparable sales of other property of recent date in the same area; and we are impressed with the thoroughness of his consideration of all speculative factors involved. He placed a total valuation on defendants' entire property of $100,895.85, computed on the basis of $1.25 per square foot. Since all parties have conceded that the small parcel next to the railroad, containing 5,924 square feet, not taken, was rendered virtually worthless, for all practical purposes the defendants are left with a single parcel consisting of 33,411 square feet. This parcel Mr. Kuebel testified would sustain a severance damage of 25 cents per square foot, reducing its value to $1.00 per square foot, assuming that it was left with unlimited access to the Old Gentilly Road on the north boundary. But assuming that it is left with no access to Old Gentilly Road, it would then have a value of 75 cents per square foot.
If we accept this testimony at full value, the most the defendants would have been entitled to by their own chief witness, if the entire property had been taken, was $100,895.85. The court below allowed $62,754.65 for the two parcels taken. If we should, as defendants insist, allow an additional 25 cents per square foot for the 33,411 square feet remaining on account of assumed total loss of access to Old Gentilly Road, amounting to $8,352.75, the defendants will then have received $71,107.40. This, added to the value of their remaining property at 75 cents per square foot, according to their appraiser, amounts to $96,165.65, which obviously is approximately 96 percent of the maximum amount they could have claimed for total loss. The evidence in the record before us does not sustain such a judgment.
The burden of proof is upon the defendants to establish damage to its remaining property. LSA-R.S. 48:453, State Through Dept. of Highways v. Levy, 242 La. 259, 136 So.2d 35 (1961). They have failed to discharge this burden to a degree of certainty sufficient to support an award. There is evidence that the Highway Department will, as a part of this project, construct an approach to the overpass ramp on the other side at a point directly opposite defendants' property. This indicates that a similar approach on defendants' side would be equally feasible. Thus, the assumption of total loss of ingress and egress would be obvious error. We are convinced, however, that there will be some impairment for *325 which additional damage should be awarded to defendants.
The witnesses for the Highway Department have made no appraisal of damage on account of loss or impairment of access because they deny such loss or impairment, and the only testimony we have on behalf of defendants is that of Mr. Kuebel, who has not given an estimate of damage based on a partial impairment or loss of access but rather 25 cents per square foot based on the assumption of total loss of access. Therefore, any damage which we might attempt to assess on account of partial loss of access, which we find as a fact to exist, would, obviously, not be supported by any evidence before us. Accordingly, we will exercise the discretion vested in us by LSA-C.C.P. art. 2164 and remand the case to the trial court for further testimony on this point and judgment as may be indicated.
After completion of a project of this kind, the damage to the property not taken can be accurately determined. Before completion there are many speculative factors. This is the reason for enactment of LSA-R.S. 48:451. As above stated, the authorities are clear that the landowner is not compelled to wait for completion of the project, but may elect to demand full compensation, including severance damage, by answer to the expropriation petition. Having elected to do so, the defendants must assume some of the risk of loss because of the speculative factors involved in an earlier determination of damage. To impose the total risk upon the Highway Department on the assumption or mere possibility of total loss of access would be manifestly unjust.
The measure of damage shall be determined on the evidence as of the date of trial. LSA-R.S. 48:453. For this purpose, therefore, the determining evidence will be that as of date of trial on remand.
For these reasons the judgment appealed from is amended so as to remand the case for further trial on the issue of additional damage on account of impairment of access to appellants' remaining property. In all other respects the judgment is affirmed. Payment of costs of this appeal and all further costs in the trial court shall await the rendition of final judgment on remand.
Affirmed in part; and remanded.

ON APPLICATION FOR REHEARING
PER CURIAM.
In the foregoing opinion we said: "The measure of damage shall be determined on the evidence as of the date of trial. LSA-R.S. 48:453. For this purpose, therefore, the determining evidence will be that as of date of trial on remand."
Apparently both the State Department of Highways and the landowners, according to their briefs on application for rehearing, question whether we mean for this damage to be determined on the basis of evidence as of the date of the original trial or as of the date of trial on remand.
We pointed out in our original opinion that the expert testimony before us on the record of the original trial relates to severance damage based on the assumption of total loss of access, as contended by the landowners, and on the basis of no impairment as contended by the Highway Department. There is no evidence in the record upon which we can determine this element of damage based on partial loss or impairment of access. Obviously, therefore, we mean for this element of damage to be determined on the basis of evidence to be taken on the trial on remand. Such evidence shall include all conditions as may exist in view of the progress of construction as of the date of the trial on remand. In determining this damage, due consideration shall be given to any offsetting special benefits which might have resulted from the construction of the ramp and access road.
*326 The landowners had a right to demand that this damage be assessed as of the date of original trial under LSA-R.S. 48:451 and 453, but since it was not done then, it would be absurd to say that the court could not take into consideration conditions resulting from the progress of construction to date of trial on remand.
With this clarification, the application for rehearing is refused.
Rehearing refused.