YARRUT, Judge.
This is an appeal by Defendant from a judgment awarding him $61,264.96, or $15,-964.96 more than the amount deposited in the registry of the court by Plaintiff for the expropriation of a tract of land to be used in the construction of Interstate Highway 10. The property is a rectangular tract situated in the Ninth Ward, New Orleans, consisting of 53,273.8 square feet, with a frontage on the south side of the Old Gentilly Road of approximately 115 feet, a depth of approximately 475 feet, and a 114-foot arrearage bordering the right-of-way of the L & N Railroad. All experts agree the highest and best use for the tract is light industrial.
The experts for Defendant, Omer Kue-bel and Paul Lemarie, testified the property had a market value of $1.25 a square foot at the date of the taking, September 6, 1963. One of Plaintiff’s experts, E. A. Tharp, estimated the value at 85‡ a square foot; and its other expert, L. X. Lamulle, at 75^ a square foot. The trial judge allowed $1.15 a square foot. Defendant appealed asking for an increase to $66,592.25 or $1.25 a square foot. Plaintiff answered the appeal for a reduction to $45,300.00, or slightly more than 85^ a square foot.
All the comparables used by both Plaintiff’s and Defendant’s experts were under the $1.15 allowed by the trial judge, the highest being slightly over $1.00 a square foot. The trial judge explained his award, in his reasons for judgment, viz:
“Many comparables have been referred to by experts on both sides, and it appears that some of the highest values paid in those comparables was $1.04, per square foot, in plaintiff’s Comparable No. 11, and a matter of either ninety-eight cents or a dollar, depending on computations in plaintiff’s Comparable No. 4, which was the Fishman-Reuter-Cenco sale. Then we had the Kruchevsky sale, in plaintiff’s Comparable No. 2, for $1.03. It is to be noted that some of these sales *453 were in 1960, 1959, and the date of taking of the property in litigation was on September 6, 1963.
“In the latter part of 1962, the NASA (National Aeronautics and Space Administration) establishment became a reality. At about this time the ship channel was recently completed and its use and potential became more apparent, and, finally, the New Orleans East development and potential was fast becoming a reality.
“These are factors which suddenly boosted the economy of the community. The Court finds that this was taking place and that these three things had a tremendous impact in boosting the economy of the City of New Orleans, and will be reflected sustantially in many years to come. Some of the experts say that they factored in these three significant developments into the overall matter, with the com-parables, in fixing value. The Court is aware, generally, that the jurisprudence in expropriation matters is that the market value should be determined by use of comparable sales immediately preceding the date of the taking. In most of those cases there was a normal, progressive economy and there was not an economic boom apparent, as in the instant case.
“Now, apropos of this situation, most of the experts in this cause agree that in estimating value they added what they believed to be the influence of NASA, New Orleans East, and the ship channel would have fiad upon the value of property in that area. This Court agrees that this should be factored in, in determining value, and agrees with the more realistic amount factored in by the experts for the defendant; however, not to the full extent of $1.25 per square foot.
“Further complicating this matter is the fact that there have been two other cases tried in this very same Court, in different divisions, with the same experts, involving abutting land, wherein the judges have concluded that $1.15, per square foot, is a proper value to be paid to compensate the land owner for the expropriation. yThese properties are adjacent, and in some instances, stand side by side with one another. While there may be some minor variations in the property, this particular Court is not impressed with an essential difference existing in these properties, as to vary the price unit.”
With regard to the first reason for the trial judge’s award, i. e., the general economic factors affecting market value, both Mr. Tharp and Mr. Lamulle testified the NASA complex, the completion of the nearby Mississippi Gulf Outlet Channel and the development of New Orleans East, would have little or no effect on the value of this particular property. To support this position, Mr. Lamulle cited a sale made about one month after the expropriation of the subject property, of a 49,476-square-foot tract on Old Gentilly Road, diagonally across from the property in the instant case, for only 61‡ a square foot. Although he conceded that most of this land consisted of the bed of Bayou Savage and was under water, Mr. Lamulle estimated the cost of fill would be only 15¶5 a square foot, thus bringing the total cost to 76‡ a square foot. However, Mr. Kuebel testified the land was extremely soft, marshy ground which might require repeated filling. However, the trial judge disregarded this tract as a comparable because he felt the estimated cost of filing the property to grade was too speculative.^
On the other hand, Mr. Kuebel- testified factors such as NASA and the industrial development along the Mississippi Gulf Outlet increased the value of industrial land in the eastern section of New Orleans, such land being in limited supply. While Mr. Lemarie, who testified only on cross-examination, did not cover this point, it was stipulated that his testimony would have “tracked” that of Mr. Kuebel.
Further explaining why he could not rely exclusively on comparables, Mr. Kuebel stated there was a paucity of recent sales in the immediate area fronting Old Gentilly Road due to the construction of Interstate *454 10, but he did testify that his investigation of sales in other parts of the Gentilly area, particularly along the Chef Menteur Highway (600 or 700 feet south of the subject property), disclosed an increase in the market value of property in that area of between 30 and 40 percent from 1960 to 1963. To illustrate what the property in question would have sold for in 1960, he used the sale of a 45,000-square-foot tract, just 200 feet away, to Cenco, Inc. in February, 1960 as between 98^ and $1.00 a square foot. Mr. Tharp and Mr. Lamulle testified this sale was virtually a forced sale because the Labor Union pressured the employer-vendee to purchase the tract for parking area for its members. However, the trial judge indicated that, because he regarded this testimony as hearsay, he would give it little or no weight. Moreover, he evidently concluded this was a fair comparable, having referred to it in his reasons for judgment (supra), as Comparable No. 4, the Fishman-Reuter-Cenco sale.
Besides comparables, Plaintiff’s experts used two other bases to justify their appraisal of the market value: (1) the land to the rear of the property was very low, and (2) it was too narrow for the installation of a spur track. Although Mr. Lamulle testified he saw some standing water and water lillies at the rear of the property, Mr. Kuebel and Mr. Lemarie said they had no difficulty walking on the land after a rain and found only the average amount of low spots. Moreover, photographs introduced into evidence show no standing water.
Mr. Tharp testified he and an accompanying engineer concluded a spur track could not be installed without encroaching on adjoining property. However, Mr. Tharp was ttnable to give any estimate of what effect this would have on the market value of the land.
As pointed out by the trial judge, two other trial courts allowed $1.15 a square foot for two similar adjacent tracts, one of which (the John R. Reuter property) which adjoins the subject property and the Cenco, Inc. property, which adjoins the Reuter tract. The same experts testified in both the Reuter and Cenco cases, as well as in the instant case. The trial judge found the properties to be identical with respect to market value.
Moreover, this court has affirmed the $1.15 awards in both State Through Department of Highways v. Reuter, 175 So.2d 316 and State Through Department of Highways v. Cenco, Inc., 187 So.2d 162, decided this date.
Although Plaintiff did not timely answer the appeal in the Reuter case, and we could not reduce the award, this opinion indicates we would not have reduced the award even if the appeal had been answered.
The testimony of Mr. Kuebel was well-supported by many comparable sales, together with his thorough analysis of all speculative factors involved.
The reasoning we employed in affirming the $1.15 award in the Reuter case (cited supra) is applicable here, viz:
“We are dependent entirely on the testimony of the experts who have testified on this point. We recognize the elements of speculation, which of necessity bear upon the appraisal, and are of the opinion that there is no absolutely accurate formula by which the value of property can be determined with mathematical exactness. Therefore, any evaluation which the court places on property concerning which competent appraisers are not in full agreement is to a degree arbitrary. Unless it is evident that the trial court is unreasonably arbitrary or its evaluation is at great variance from the appraisal of the experts, we feel its judgment should not be disturbed. * * *
“Any figure which we might find between $1.15 and $1.25 would, on its face, be arbitrary; and to allow $1.25 as appellants contend would be to disregard entirely the testimony of other qualified appraisers and the opinion of the trial judge. *455 There is nothing in the record to justify our doing so. We therefore accept as just and reasonable the figure of $1.15 as found by the trial judge,”
for which reasons we can find no basis to disturb the trial judge’s award; hence, the judgment appealed from is affirmed. The Plaintiff is to pay all costs taxable to it in the lower court; Defendant to pay all costs of this appeal.
Judgment affirmed.