CHASEZ, Judge.
These are separate proceedings for the expropriation of two tracts of land to be used in connection with the construction of Interstate Highway 10, which were consolidated for purpose of trial. Defendants are Felix S. Francis, the owner of both tracts, and Robert R. Gibbs and Louben, Inc., lessees of parts of one of the tracts.
The value of the interests of the lessees was stipulated and it was agreed that that value would be paid to the lessees by the owner out of the total amount found due to the owner as a result of the expropriation.
The tracts are adjacent, but separate and distinct in that many of the factors involved in determining the market value of each are different. The tracts will be referred to hereinafter simply as “Tract 17-4” and “Tract 17-5”.
The state deposited the sum of $160,000 as representing the total value of all property, buildings, and leasehold interests taken constituting Tract 17-4 and $16,650 as representing the value of the property taken referred to as Tract 17-5.
Defendant answered in both proceedings claiming additional compensation.
The trial court awarded $2.20 a square foot or $133,000 for the land, and $53,000 for all the improvements thereon, or a total of $186,000 for Tract 17-4, and $25,500 as representing the value of that portion of the property actually taken, referred to above as Tract 17-5, a grand total of $211,500.00.
The State appealed, and the defendant-owner answered the appeal seeking an increase in the award.
The State contends, in its specification of errors, that the trial court in effect discarded all comparable sales given as indicia of market value by certain language in its reasons for judgment, specifically “The comparables offered aré helpful but in *5 consistent and inconclusive.” The State further contends that the trial court did not consider the testimony of its experts and that it was in error in not doing so without finding that their testimony was “without sincerity and not based on sound reasoning.”
Particular errors assigned with regard to Tract 17-4 are the finding of a value of $2.20 per square foot when no expert testified to that particular value, and the failure to distinguish between the commercial and residential portions of that tract.
Particular errors assigned with regard to Tract 17-5 are the failure to make separate awards for the property actually taken, and for damages to the remainder of the property.
' At the trial, Lancelot M. Dixon and Anton V. Werner testified as experts in contracting, and James Maloney and George A. Frilot testified as expert appraisers, on behalf of the owner. Max J. Derbes, Jr. testified as an expert appraiser, and the written report of E. A. Tharpe, Jr., was admitted by joint stipulation of counsel, on behalf of the State.
The testimony of both Mr. Dixon and Mr. Werner was to the replacement value of the buildings on Tract 17-4, without any allowance for depreciation, so is of little, if any, value.
We will deal with each tract, and the expert’s opinions with regard to same, separately.
Tract 17-4 was the subject of a total taking. It measures 108.56 feet front on Chef Menteur Highway (U. S. 90 East), a depth on the eastern line of 553.99 feet, a depth on the western line of 558.27 feet, and 108.47 feet on the rear or northern line, adjoining a paved subdivision street, and contains some 60,330 square feet of which approximately 85% or ,50,445 square feet is zoned “F Heavy Commercial”, and the rear 76 feet or so, approximately 15% or 9,885 square feet is zoned “B — two family residence.”
The tract is located in the Third District of the Ninth Ward, within the City of New Orleans. All of the experts agreed that the highest and best use of the tract was “F Heavy Commercial”, and all, save one, were of the opinion that the residential portion in the rear was subject to a use compatible with the commercial use of the balance of the property, off-street parking being one example given. All of the experts seemed to agree that commercial use being the highest and best use, only the value of the commercial structures thereon were proper subjects for recompense. It seems that the actual use being made of property is disregarded in determining its market value, for it is the use a willing buyer might wish to put it to that is the subject of inquiry.
All of the experts indicated that the method of appraisal used for the land was market value, determined from adjusted comparables, and for the buildings, the replacement value less depreciation. All of the experts expressed some dissatisfaction with the type of and limited number of comparables available. It seems that there was a particular scarcity of compara-bles in the area, dated after the announcement of various factors which admittedly had a tremendous influence on the demand for properties in this area.
All of the evidence indicates, and we think it is common knowledge, that the business outlook for the area, as of time of the taking, was generally very bright. It appears that there had been a great deal of new construction in the area, and a number of extremely large tracts that had theretofore been retained in single ownership had recently come onto the market for development. The trial court in his reasons for judgment noted:
“* * * The most important of these factors was the establishment of the Michoud or N.A.S.A. space works on the Chef Highway. They, (the experts), noted that the Highway 90 is the main route East out of the City of New *6 Orleans going in the direction of the Gulf Coast and northern Mississippi, and that the highway was the most heavily travelled in the State of Louisiana. Sewer, water and other utilities have been extended to this area which happens to be the last ’ available land sites for the growth and expansion of the City of New Orleans. The appraisers also called the Court’s attention to the rocket test plant now nearing completion in the Slidell area which will employ as many people as the Michoud Plant and which has stimulated growth and development of commercial and residential property along the Chef Highway. Also contributing to the rapid increase of values in the subject area is the construction of the high level bridge over the Industrial Canal, which facility was under way at the time of the taking. This bridge will eliminate a serious deterrent to residential and industrial growth in the subject area.” (Words in parenthesis added.)
Mr. James Maloney, one of the experts appearing for the owner, determined from his study of the comparables he thought most appropriate, that property values had increased on an average rate of 15% per year, and concluded that the subject property was worth $2.30 per square foot at the time of the taking. He estimated the value of the auto parts building to have been $32,150, and the animal hospital $19,-600, or a total of $52,750.
Mr. George A. Frilot, Jr., appearing for the owner, was of the opinion that the tract was worth $2.40 per square foot. He calculated the value of the auto parts store at $36,000, and the animal hospital at $17,500.
Mr. Max J. Derbes, Jr. was the only expert appearing to testify for the State, and also was the only expert to value the commercial and residential portions of the tract separately. He was also the only expert who indicated an opinion that negro property and poor white housing a short distance to the east of the subject property had a significant adverse effect on its value for commercial purposes. He was also the only expert to expressly discount the effect of the high rise bridge over the Industrial Canal on the subject property, though recognizing that the bridge does have a beneficent influence on property values in the area generally. In view of the fact that the whole area is in the process of general improvement, which Mr. Derbes recognizes, and in view of the opinion of the other experts, we conclude, as apparently did the trial judge, that whatever adverse influence these factors may have, it is minimal.
Mr. Derbes assigns a value of $1.25 per square foot to the residential portion of the tract. For the commercial portion he gives us alternate computations — $1.65 per square foot with all the improvements, though excluding the value of same, and, alternatively $1.90 per square foot, excluding all improvements save the two commercial structures on the tract. He assigns a value at time of taking of $25,124 to the auto parts building, and $18,321 to the animal hospital, or a total of $43,450.
Mr. E. A. Tharpe, Jr. did not testify, but his qualification as an expert, and his appraisal report were admitted by stipulation of counsel. He did not appraise the commercial and residential portion of the property separately as he was of the opinion that the property could be used compatibly, in the event it was not subject to rezoning. He placed a value of $1.90 per square foot on the tract, $25,795 on the auto parts building and $18,676 on the animal hospital.
Tract 17-5 consists of parts of four residential lots, Lots 1, 2, 3, and 4 of Square 16, Francis Subdivision, which according to plats in evidence, originally were respectively 65', 60', 60', and 60' each, or a total of 245' overall frontage on Francis Street, by 85' deep, and a total of approximately 20,825 square feet. The lots are vacant and unimproved. Tract 17-5 is that part *7 of these lots actually taken for use in this project, approximately 9,840 square feet, leaving a remainder of approximately 10,-985 square feet.
It appears that the customary way to value residential lots is at so much per front foot. It also appears that there was some question as to the size of the lots, hut the plats introduced in evidence are not alleged to he in error.
Mr. Maloney and Mr. Frilot both arrived at a figure of $100, per front foot as the value of the lots. Both were also of the opinion that the remainder of the property would be unsalable and valueless to the owner, and considered the property as in effect wholly taken. Mr. Maloney, on the stand, while not having made a separate appraisal of the remainder, ventured a guess that the remainder might be worth $3,000.
Mr. Derbes appraised the lots two ways, and assigned a value of $106.25 per front foot or $1.25 per square foot, a total value of $26,031.25. The value of the part taken he values at $12,301, and assigned a severance damage to the remainder in the sum of $3,781.00. In arriving at the severance damage, he determined that two building sites could be salvaged, — the remainder of lot 4 he valued at $5,175., and the remainder of the other three at a total of $4,773., making a sum total of $9,948.
Mr. Tharpe assigned values of $100 per front foot, or $1,207 per square foot. Lot 1, which was nearly all taken, he valued at an additional 10% because it was a more desirable corner lot. His actual value of the whole was:
o o m o t-i o tC co' 69- *-< h-i -69 CO h-1 O O s O Xx -69 X
TOTAL.$25,150
The value of the part taken he sets at $11,880, with a severance damage to the remainder of $4,770. Mr. Tharpe also divided the remainder into two building sites, —the remainder of Lot 4 at $5,000 and of the other three at $3500.00, or a total of $8500.00.
We cannot give credence to the contention of the State that the trial court rejected consideration of comparables as indicia of market value, nor to the contention that the court rejected consideration of the opinions of its experts. Certainly the comparables offered are inconsistent, nor should such evidence be taken as “conclusive” of value. But we do not believe that the language of the court below indicated that the court rejected this evidence, which, after all, represents a long standing and well recognized appraisal technique.
Comparables in cases like the present must be adjusted, and this is the function of the experts. As indicated by the record, four of such men presumably gave careful consideration and study to all of the factors each thought was significant, and weighed them accordingly and compared as accurately as possible with other sales in the vicinity, took into account the passage of time and economic developments generally, and each arrived at his conclusion as to value.
The trial judge, faced with this mass of inconsistent and conflicting material, upon which the experts gave him inconsistent and conflicting opinions, was required to resolve the conflicts as best he could. When faced with a conflict in expert opinion in the area in which they profess expertise, there is nothing else he can do. Nor must be accept one expert to the exclusion of all the others, though he possess no particular expertise himself. Certainly there is nothing'in this record upon which we would found an opinion that the trial court did not consider the evidence of one party’s experts at all.
We do believe, however, that in light of the numerous factors cited above, exerting an unprecedented influence on property values in the area, that perhaps a *8 somewhat greater figure should have been awarded by the court below. Therefore, consistent with this belief, the award for Tract 17-4 will be increased from $2.20 per square foot to $2.30 per square foot, or a total of $138,760, for the land alone, the judgment with regard to this tract will, in all other respects, be affirmed.
With regard to the alleged error of the court below in failing to distinguish in its opinion the value of the commercial and residential portions of that tract, it is noted that only one of the experts thought that the residential property could not be used compatible with the commercial portion, and further, whatever influence that factor had on value presumably was reflected ultimately in the market values as adjusted by these experts for their use in arriving at their opinions.
“Severance damage” is the amount the remainder has decreased in value as a result of the taking of the part. In order to compute severance damage, the value of the whole is first found, then it is necessary to allocate that value between the part taken, and the part remaining. The amount of severance damage is the decrease in market value of the remainder. If the remainder has no value, then in effect the whole has been taken and the full original value should be awarded. If it has any value, then whatever that sum is, should be subtracted from the proportionate value of the part, to give the amount of severance damage. The trial court simply subtracted the market value of the remainder from the original market value of the whole. It is not obvious to us that this is improper or in error, and it is not explained how it may be so.
We do not believe that there is significant error in the trial court’s valuations with respect to Tract 17-5.
The value of the remainder is somewhat questionable, and the court below concluded that at best only one building site could be obtained from same, contrary to the State’s experts opinion that two sites could be obtained. In addition, the value suffers somewhat because of its irregular size, and perhaps one of the biggest detrac-tions, the proximity of the expressway approach for which the property was expropriated. In light of these factors, we cannot say that the court erred in finding a value for the remainder of $2,500. Accordingly, we think the award of $25,500 for tract 17-5 should be affirmed.
Appropriate to this case is the statement of this Court in the case of State of Louisiana through the Department of Highways v. Reuter, La.App., 175 So.2d 316, 324 as follows:
“We are dependent entirely on the testimony of the experts who have testified on this point. We recognize the elements of speculation, which of necessity bear upon the appraisal, and are of the opinion that there is no absolutely accurate formula by which the value of property can be determined with mathematical exactness. Therefore, any evaluation which the court places on property concerning which competent appraisers are not in full agreement is to a degree arbitrary. Unless it is evident that the trial court is unreasonably arbitrary or its evaluation is at great variance from the appraisal of the experts, we feel its judgment should not be disturbed.”
For the foregoing reasons the judgment of the trial court awarding the sum of $133,000 as compensation for the land in Tract 17-4 is hereby amended to increase said award to the sum of $138,760, increasing the total judgment to $217,260.
In all other respects the judgment of the Court below is affirmed. All costs of this appeal shall be borne by the State of Louisiana through the Department of Highways.
Amended and affirmed.