GLADNEY, Judge.
This expropriation suit was instituted on January 11, 1961 in connection with a portion of the Federal aid project 1-20 between Calhoun and West Monroe in Ouachita Parish. The action so taken affected 5.485 acres for right of way purposes, .048 acres for a drainage servitude, and severance damages to the remainder of the tract, 54.47 acres. The Department of Highways deposited into court its estimate of damages: Value of land and servitude $684.00, damages, $2,126.00, or a total of $2,810.00. The defendant landowner, Tom R. Shelton, timely filed an answer in the proceedings asserting that the amount was insufficient. Subsequently the case was tried during October and December of 1965 resulting in a judgment awarding the defendant landowner the sum of $4,290.00, being $1,480.00 in excess of the amount deposited upon the *162 initial taking. From this judgment the defendant has appealed.
Appellant complains the judgment of the trial court was in error: (1) In failing to give effect to the testimony of F. O. Seymour, an expert appraiser for defendant; (2) in failing to award damages adequate to provide access to the property; (3) and in measuring defendant’s severance damages as of the date of taking in 1961, and in not determining such damage as of the date of trial.
In brief before this court counsel for appellant does not seriously question the findings of the trial court with respect to the value of the land taken in the right of way and for the servitude of drain, a total of $750.00 therefor. Proof as to these items was adequate, the trial court relying upon the testimony of two of appellee’s expert witnesses and upon the testimony of J. Wayne Medley, an expert witness produced by the defendant. There is no reason for disturbing this portion of the judgment.
Our further consideration will be primarily directed towards ascertaining the adequacy of the award for severance damages by the trial court in the amount of $3,540.00. During the course of the trial the Department of Highways relied upon the testimony of expert appraisers W. Dean Carter and Chester Driggers and the defendant Shelton offered the testimony of appraisers F. O. Seymour and J. Wayne Medley for the purpose of determining the value of the property remaining after severance of the property taken.
Prior to these proceedings the property of the defendant consisted of a 60 acre tract of land located approximately 7 miles west of the City of West Monroe. Access was provided by a narrow dirt road running along a ridge in the direction of Highway 80 west of the subject property. The effect of the taking by plaintiff of 5.485 acres was to close this means of ingress and egress. After the taking the property was bounded on the south by the Illinois Central Railroad, on the north by 1-20 and on the east and west by private property upon which there are no public roads.
The testimony of F. O. Seymour was not given consideration by the trial court in fixing the market value of the property for the reason that the trial court was convinced the property was not suitable for subdivision purposes as Seymour had testified. We find no error in the trial court’s nonacceptance of the testimony of F. O. Seymour that the property was more valuable for subdivision purposes. There appears no justification for such a conclusion due to its location, some seven miles from West Monroe, the nearest populous area.
The court accepted the testimony of three experts who testified the best use of the property was for timber growing. These witnesses placed an approximate value of $135.00 per acre on the 60 acre tract prior to the taking and concluded that 55 acres remaining in the tract after the taking and without access was worth from $70.00 to $85.00 per acre. Consistent with this evidence the trial court fixed the severance damages at $3,540.00.
As a result of the construction of 1-20 the remainder of defendant’s property is “landlocked”, that is, it was left without means of egress and ingress by public road and Shelton earnestly contends that he was not allowed a sufficient amount in damages to restore access. The road which existed prior to the expropriation was a narrow dirt road without ditching and was more or less a trail or passageway not frequently utilized. J. M. Norris, a surveyor, testified that the road was not always passable, but led north to Highway 80. It is indicated that the estimated cost of replacement across the most direct route, with adequate fill and culverts to a width of 20 feet, would cost an estimated $6,878.33. By reducing the road to a 10 or 12 foot width, thus equating the width of the former dirt road, and by eliminating drainage culverts, the total cost was estimated at $5,128.33. Medley, de *163 fendant’s appraiser, testified that after construction of the proposed road the property would generate a value of $275.00 an acre. However, he expressed the opinion that construction of the road would not be economically feasible, as its cost, plus the cost of obtaining the right of way, would exceed the appreciation in value of the property caused thereby. After considering the cost of providing an access road, the trial court concluded its total cost would exceed the value of the land prior to its expropriation, and held defendant’s position untenable. Quoting LSA-R.S. 48:453 which provides, inter alia, that damages to the remainder of the property shall be determined as of the date of trial, the trial judge reasoned:
“The law appears well founded and settled as to the manner, the time and the evidence to be considered in the fixing of severance damage. The value of the land is to be fixed as of the date of the ‘taking’, both for the expropriated portion and for the diminishing of the value of the remaining property by the ‘taking’. The damages themselves are to be assessed from the evidence which exhibits that damage to the Court as of the date of trial. But as damages relate to market value or the real value of the subject property it will relate back to the date of the ‘taking’.
“This Court does not mean to make ‘short ■shrift’ or to treat lightly this argument, but ordinarily the very construction of the highways, such as 1-20, immediately and ■dramatically improve and increase the value •of property along such rights-of-way. Defendant’s argument would condemn the expropriator of any property for such road ■construction to severe damages by reason of the improvement of accessibility to property and the natural increase in market value of the property adjacent thereto. In the instant case defendant’s property has been adversely affected and access and use has been limited by reason of the construction, but much property in the vicinity of defendant’s property has increased tremendously in value merely by reason of the construction of this highway through a hilly, unopened and sparsely populated area.
“The expropriating body must, of course, contemplate within some reasonable bounds, the expenditures needed for the construction along their proposed rights-of-way. If public bodies were required by law to speculate as to damage five, ten or fifteen years distant, dependent upon the time required for completion of the construction, inflation, etc., it is conceivable that little progress could be made in the construction of highways and other public improvements because of the highly speculative character of the amounts involved in the proposed construction. The value of the land is to be determined as of the date of the ‘taking’, both for the purpose of fixing the value of that land which is taken and for determining the after value of that land which is not taken by reason of damage resulting from the improvement located on the adjoining property. This law this Court believes to be clear and concise.”
Counsel for appellant disagrees with the trial court’s position that the market value of the remaining property must be determined as of the time of taking rather than determined as of the time of trial. Reference is had to the cases of State Through Department of Highways v. Reuter, La.App., 175 So.2d 316 (4th Cir. 1965) and State Through Department of Highways v. Anding, La.App., 189 So.2d 445 (3rd Cir. 1966). Appropriate also are LSA:R.S. 48:-453, and 456 which read:
“48:453.
“The market value is determined as in general expropriation suits but as of the time the estimated compensation was deposited in the registry of the court.
“Damage to the remainder of the property is determined as of the date of the trial.
“In either case the defendant has the burden of proving his claim.”
******
“48:456.
*164 “If the compensation finally awarded exceeds the amount so deposited, the court shall enter judgment against the departments and in favor of the persons entitled thereto for the amount of the deficiency.
“If the compensation finally awarded is less than the amount so deposited, the court shall enter judgment in favor of the plaintiff and against the proper parties for the amount of the excess.”
In State Through Department of Highways v. Reuter, the court, in remanding the case for further trial on the issue of additional damage on account of impairment of access to appellants’ remaining property, opened the door to consideration of the damage to the property after completion of a project. The opinion stated:
“After completion of a project of this kind, the damage to the property not taken can he accurately determined. Before completion there are many speculative factors. This is the reason for enactment of LSA-R.S. 48:451. As above stated, the authorities are clear that the landowner is not compelled to wait for completion of the project, but may elect to demand full compensation, including severance damage, by answer to the expropriation petition. Having elected to do so, the defendants must assume some of the risk of loss because of the speculative factors involved in an earlier determination of damage. To impose the total risk upon the Highway Department on the assumption of mere possibility of total loss of access would be manifestly unjust.
“The measure of damage shall be determined on the evidence as of the date of trial. LSA-R.S. 48:453. For this purpose, therefore, the determining evidence will be that as of date of trial on remand.” [175 So.2d 316, 325]
Further comment was made on the application for rehearing in the Reuter case, the court observing:
“ * * * Obviously, therefore, we mean for this element of damage to be determined on the basis of evidence to be taken on the trial on remand. Such evidence shall include all conditions as may exist in view of the progress of construction as of the date of the trial on remand. In determining this damage, due consideration shall be given to any offsetting special benefits which might have resulted from the construction of the ramp and access road.” [175 So.2d 316, 325]
In State Through Department of Highways v. Anding, the court in fixing severance damages as of the date of trial, considered a situation in which it was shown that the landowner instead of suffering any severance damages to the remaining land, actually received a windfall of $8,500 for dirt removed therefrom and judgment of the trial court was amended to deduct from the amount allowed a sum of $4,250. To this date we have been referred to no specific pronouncement by the Supreme Court upon the exact question presented herein concerning the determination of severance damages as of the date of trial.
Counsel argues that the only way to compensate appellant and to restore his property to its former usefulness is to provide him with access. Alternatively, counsel for the property owner suggests that the time for measuring Shelton’s damages is-the time of trial and not the time of the original taking by the Department of Highways. In giving consideration to these contentions, it will be observed that the statute-imposes upon the defendant the burden of proving his claim. Such proof must be positive and certain and cannot rest upon mere speculation.
The defendant has relied for such proof strongly upon the testimony of his expert witness Medley. The trial court accepted the testimony of this witness in fixing the market value of the property taken as having a value of $135 per acre. Medley testified as to the after value of the re *165 mainder of the property in 1965, the date of the trial, as follows:
“Q What value per acre as of today without access did you place on the subject property?
“A My estimated value using these comparables and adjusting their sales prices for location, size and of course there was no adjustment for the date of sale because they were all of current date, the accessibility was adjusted — I estimated a value for the subject property of $137.50 an acre, which totals—
“A —Well I have that at 54.47 acres and that came out at $7,489.62 which I rounded to $7,500.00.
* * * * * *
“The Court: In fact the remaining land today without access is worth more than the old land was before the taking ?
“A According to my estimate, yes, sir.
“Q Is it your opinion Mr. Medley that by the construction of this proposed road that the property would then generate a value of $275.00 an acre ?
“A Yes, sir.
“Q In your opinion Mr. Medley is it economically sound to construct this road?
“A At this time it is not. If you take the cost of the road and add the cost of the right-of-way then this exceeds the appreciation that the property would enj oy to the road being there.
“Q So it is not economically feasible?
“A It is not economically feasible.”
* * * ‡ * *
“Q Then it would be your opinion then that had the state not taken the access or had the property been provided with at this time that it like all of the other property in the area would have realized its increase in economic value, is that correct ?
“A Well, it should have, yes, sir.
“Q And your opinion is that that in-, crease would have been to $275.00 per acre?
“A Probably at this time, yes, sir, that is my estimate. If it had'access at this time it would be $275.00.
“Q That is your opinion as I understand your testimony?
“A Yes, sir, that’s right.
“Q Now when you stated that it was not economically sound to construct the road, I take it from what you mean by that statement that because of the fact that the Bentz and El-more estimate of $6800.00 plus dollars, plus the cost of the acquisition of the right-of-way and the construction of the cattle gaps would exceed the increase in value of the property by virtue of such construction that you have concluded that it would not be economically sound, is that correct?
“A That is correct, yes, sir.
“Q In other words you would spend more money than the property would increase in value by virtue of the existence of the access?
“A According to the market data that I have interpreted, yes, sir, you spend more than you could get out of it. I think in my report I said' it would be my recommendation to hold the property until the demand is such that it would be feasible to construct the road.”
The testimony of this witness does not establish the feasibility of such a road.' Therefore, it seems to us that the replace-ment of a road and the cost thereof as re *166 lated to the value of the property as of the time of trial is not sufficiently proven.
Counsel for appellant asks that damages be fixed at not less than the difference between the market value of the land with access and the market value of the land without the access, both measured as of the time of trial. Conceding the validity of this statement, we find that the defendant has failed to establish the market value of the remainder of his property as of the date of trial. The witness Medley testified that as of the date of trial the market value of the land, with access, would be worth $7,500 more than without access. But this testimony is not supported by adequate proof and is speculative.
The trial court construed LSA-R.S. 48:453 to mean that “The damages themselves are to be assessed from the evidence which exhibits that damage to the Court as of the date of the trial. But as damages relate to market value or the real value of the subject property it will relate back to the date of the ‘talcing’.” In our opinion such an interpretation results in a determination of severance damages as of the date of the taking and is inconsistent with the provisions of the statute. The statute imposes no restriction upon the landowner for determining the loss sustained to the remainder of the property by declaring that the worth of such property shall be determined as of the date of trial. Therefore we hold that where the defendant has exercised the option of waiting until the completion of the project and then determining his loss as of the date of trial, all criteria which affect such loss may be considered. As pointed out in the Reuter case, supra, when the defendant elects to follow this procedure due to changes in the worth of the property, his severance damages may be decreased. In presenting evidence as to the diminished value to the remainder of the property as of the time of trial the defendant is entitled to have such property appraised and its then value presented as evidence in determining his loss. This may include enhancement in value caused by the completion of the project for which some of his property was expropriated.
Upon examining the proof presented to prove greater severance damages than awarded by the trial court, we find such proof unsatisfactory and unacceptable. Medley gave no sound reason for the property’s enhancement in value between 1961, the date of the taking, and 1965, the date of the trial. His testimony that the property would be worth $7,500 more than as of the time of taking is not supported by proper comparables and is speculative. The highest and best use of said property was not changed during the four years and the property was still as useful for timber growing. There is no evidence that the construction of 1-20, which closed his means of access, has increased the value of the property for timber growing purposes. Therefore, it is our conclusion that the testimony of Medley as to such increased value is not justified. Further, it is purely speculative to say that the differential between the subject property with access as of the date of trial and the subject property without access as of the date of trial has not remained constant. It is conjecture, we think, for the witness to say that such differential which was $65 per acre at the time of the taking, has increased to $137.50 per acre.
In the absence of sufficient proof that appellant’s damages to the remainder of his property would be greater than as awarded by the trial court, we are of the opinion the judgment should be affirmed. It follows that costs must be assessed against appellant.
Supplemental Opinion
PER CURIAM.
Counsel for appellant has called our attention to the part of our adjudication which assessed costs against appellant. It was the intention of the decree to tax appellant only with costs of this appeal and to this extent our original opinion is corrected.