KNOLL, Judge.
This is an appeal in an expropriation suit. The Department of Transportation and Development (DOTD) appeals the trial court judgment which awarded defendants, Ira L. Campbell, Jr. and his wife, $64,859 for future economic losses associated with the expropriation. DOTD’s argument on appeal is that the trial court erred in awarding compensation for future economic loss which was based on speculative testimony. *1225 We remand for the taking of additional evidence.
FACTS
DOTD brought this action against Mr. and Mrs. Ira L. Campbell, Jr., the owners/lessors [1] of a tire/automobile service business in Natchitoches, to expropriate a strip of land, measuring approximately 15 feet in width with a corner flare widening to approximately 45 feet at the intersection of Keyser Avenue and East Fifth Street.
When DOTD initiated the expropriation, the property was leased by the Campbells to Goodyear Tire & Rubber Company. The written lease, which began on May 24, 1972, provided for a 10 year primary term with two 5 year option periods. At the time of the expropriation, the lease was in its second option period and had a termination date of August 31, 1993.
DOTD initiated the expropriation proceeding by depositing $17,836 in the registry of the court as estimated compensation due the Campbells. The Campbells answered, asserting that additional compensation was due for severance damages and future business losses.
At trial, the parties stipulated that the value of the part taken was $20,160. In addition, the trial court awarded the Camp-bells $127,840 for severance damages. DOTD has not appealed these awards.
The trial court also awarded the Camp-bells future economic losses of $64,859. At the time of trial, highway construction had not begun. However, the trial court made an award of economic loss since construction was imminent. There was a clause in the written lease between the Campbells and Goodyear which granted Goodyear the right to terminate the lease if the business premise or any part thereof was expropriated.[2] The trial court itemized this award as follows: (1) $8,644 for losses during building construction; (2) $12,965 for losses during highway construction (180 days @ $72.03/day); (3) $43,250 for reasonably anticipated lower rental payments. This appeal followed.
FUTURE ECONOMIC LOSSES
DOTD contends on appeal that the trial court’s award for future economic losses was speculative. It argues that the evidence does not preponderate that quantifiable economic losses were anticipated before the expiration of the Goodyear lease on August 31, 1993.
The general law and jurisprudence on expropriation is well developed in Louisiana and will not be repeated herein. See, State, DOTD v. Dietrich, 555 So.2d 1355 (La.1990). With regard to the specific issue presented in the case sub judice, it is established that where the landowner challenges the amount DOTD deposits for compensation, a greater value must be proven by a preponderance of the evidence. Id. Proof of economic loss may be determined by various methods, and it may exceed the market value of the property. However, the method employed for proof of loss must demonstrate by a preponderance of the evidence that an actual loss will be *1226 sustained by the business because of the taking. Id.
It is undisputed that highway construction on Keyser Avenue had not begun as of the time of trial. Equally undisputed is that at the time of trial, Goodyear continued to timely pay its monthly rentals and had not informed the Campbells that it would exercise its right under the lease to terminate the lease because of the expropriation.
Dr. Melvin Harju, an economist, testified as an expert witness on behalf of the Campbells. Dr. Harju stated, in pertinent part:
“I had in my notes that we could expect that Goodyear would be out of operation for 120 days [the estimated time of construction for remodeling the building].
[[Image here]]
So essentially what I am saying is that if they were out of operation for 120 days, if they did in fact demand that they not pay rent obviously for the time that they were out of operation, then Doctor Campbell would be out an additional eight thousand, six hundred and forty-four dollars ($8,644.00).
Now, if you’ll look at the second of those three calculations there you’ll see the losses to the end of the lease. Now, I don’t mean to imply that these are actual losses, they are potential losses that could occur if he were not to receive any more lease payments from today until the end of the lease.
As I appreciate it the lease, current lease, should end on the 31st of August of 1993. This is currently the 15th of October, 1991, which means that there are 686 days left on the remaining lease. Based upon the lease rate of twenty-six thousand, two hundred and ninety-two dollars ($26,292.00) per year if he were not to receive any additional lease payments between now and the end of the lease his losses for the period to the end of the lease would be forty-nine thousand, four hundred and fifteen dollars ($49,415.00).
Now obviously, as I appreciate it, he still is receiving such payments, and may on into the future. So what I’ve done is to have shown the lease payments per day, which are seventy-two dollars and three cents ($72.03). So it would be very easy to say this, for example, that if the days out of operation completely were two hundred days you’d simply take two hundred times seven-two [sic] dollars and three cents and that would be the amount of the loss. If there were additional days in which there would be perhaps a reduction in lease payments, although not an absolute reduction to zero, then one could take the number of such days, multiply the percentage times this figure, seventy-two dollars, and arrive at a figure for that period of time. So I have attempted to put the seventy-two dollar figure on there so that that could be used in conjunction with whatever the evidence supports as to the expected down time for this particular facility.
[[Image here]]
So if the days out of operation were 120 the minimal loss would be eighty-six hundred and forty-four dollars.
[[Image here]]
[If we take into account the possibility of a longer period of time for down time that] exceeded 120 days, then the amount of the loss would be greater than eight thousand, six hundred and forty-four dollars, but less than forty-nine thousand, four, fifteen, since that would represent the totality of the remaining lease payments from today until the end of the lease.”
Later, under cross-examination, the following colloquy developed between counsel for DOTD and Dr. Harju:
“Q. Has construction started on this project?
A. Not to my knowledge. I understand that it’s supposed to be let soon, or was designated to be ...
Q. Do you know when it will start?
[[Image here]]
A. No, I don’t. And that’s the reason why I stated in terms of dollars per day. *1227 Obviously that information is to be generated by someone other than me.
[[Image here]]
Q. Has Goodyear failed ... do you know whether Goodyear has ever said we want a reduction in rent?
A. I don’t believe Goodyear has obviously entered into the negotiations to this point. I think they’ve probably, from what I’ve heard, just really become recently aware of the difficulties that they’ll be facing at that location.
Q. So you’re speculating on what Goodyear will do?
A. There’s nothing else I can do.
Q. Same thing with regard to losses to the end of the lease. Until they begin construction none of those losses are going to occur, are they?
A. Well, until Goodyear quits paying the lease payments, which may be before the construction, after the construction, coincident with the construction, whenever that may be.
Q. Do you know when it would be?
A. Obviously not, and that’s why I put it in terms of dollars per day.”
After carefully reviewing the record, we find that there was no testimony about the anticipated commencement of highway construction on Keyser Avenue. Similarly, there was no testimony about Goodyear’s intentions to exercise its cancellation rights under the lease. Because of the manner in which Dr. Harju projected the Campbells’s losses, i.e., based on down time during construction and exercise by Goodyear of its termination rights, we are faced with a serious question on what the trial court could have based its award for future economic losses. Because of this we find it necessary to examine whether a remand is required to obtain additional evidence.
The authority of an appellate court to remand an action to the trial court for consideration of an issue is derived from LSA-C.C.P. Art. 2164 which states:
“The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal....”
Louisiana jurisprudence has interpreted this article to empower an appellate court to remand a case for the consideration of new evidence. Jones v. LeDay, 373 So.2d 787 (La.App. 3rd Cir.1979) and cases cited therein. Elaborating in Jones, we stated at page 789:
“However, although an appellate court is empowered to remand a case, ... for the introduction of additional evidence, such a procedure is sparingly exercised. Although a court should always remand a case whenever the nature and extent of the proceedings dictate such a course, nevertheless, whether or not any particular case should be remanded is a matter which is vested largely within that court’s discretion and such power to remand should be exercised only according to the peculiar circumstances presented in each individual case.” (Citations omitted.)
See also, Huval Baking v. Workers’ Comp. Bd., 594 So.2d 1028 (La.App. 3rd Cir.1992).
Because this case was tried prior to the commencement of construction, it could not be shown with any specificity at trial how great the economic losses would be since the construction period could not be established. Simply stated, evidence of the length of construction and Goodyear’s actions as a result of that was not available for presentation at the time of trial. Nevertheless, if construction took place during the existence of the Goodyear lease, the Campbells would have suffered quantifiable economic losses because of the expropriation. Accordingly, in the interest of justice, we will remand this case to the trial court for the taking of evidence on the economic losses the Campbells have encountered as a result of the highway construction to include any actions taken by Goodyear under the written lease as a result of DOTD’s expropriation. The measure of damages shall be determined on the evidence as of the date of trial on the remand.
In making this determination, we recognize that the Campbells could have elected to delay the filing of their answer to the expropriation until DOTD accepted the con *1228 struction of the highway project. LSA-R.S. 48:450(B)(1). However, we likewise note that in State, Department of Highways v. Reuter, 175 So.2d 316 (La.App. 4th Cir.1965), our brethren of the Fourth Circuit chose to remand a similar case to determine damages as of the date of trial on remand. In Reuter, the question was whether the landowner suffered a total or partial loss of access to his property; at the time of trial, this question could not be definitively answered since highway construction was not completed. Deciding upon a remand, the appellate court in Reu-ter stated at page 325, “To impose the total risk upon the Highway Department on the assumption or mere possibility of total loss of access would be manifestly unjust.” We find the same reasoning applicable in the case sub judice. If the Campbells suffered economic losses since the original trial of this matter which were directly attributable to the highway project, a reversal of this item of damages without a remand would equally be unjust. Compare, State, Dept. of Hwys. v. Ross Continental Mot.1, Inc., 328 So.2d 883 (La.1976) (in that case, remand was not considered because loss of rental could not be proven.)
For the above and foregoing reasons, the judgment of the trial court as it relates to the award for economic losses is reversed and set aside and this matter is remanded to the trial court for further proceedings consistent with the views expressed herein. Costs of this appeal are assessed equally to DOTD and the Campbells. Costs at the trial level are to await a final determination of this matter.
REVERSED IN PART AND REMANDED.

. The lessee, Goodyear Tire and Rubber Co., is not involved in this litigation.

. The entire lease provision applicable herein states:
"If the premises, or any part thereof, shall be appropriated for any public use by virtue of eminent domain or condemnation proceeding, or if by reason of any law or ordinance, or by court decree whether by consent or otherwise, the use of the premises by Lessee for any of the specific purposes hereinbefore referred to shall be prohibited, Lessee shall have the right to terminate this lease upon written notice to Lessor, and rental shall be paid only to the time when Lessee surrenders possession of the premises. In the event of partial appropriation of any part of the premises described herein, Lessee may elect to continue in possession of that part of the premises not so appropriated under the same terms and conditions hereof, except that in such cases Lessee shall be entitled to an equitable reduction in the rental payable hereunder. Any rental paid in advance beyond such time shall be returned by Lessor to Lessee on demand. Lessee reserves the right to claim, prove and receive in any condemnation proceedings such amount as may be allowed for fixtures and other equipment installed by it and for the unamortized value of its leasehold improvements."