# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

**15-8**

**TOMMIE HEBERT, ET UX.**

**VERSUS**

**J. ORAN RICHARD, ET AL.**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. C20081200
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN D. SAUNDERS
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Shannon J. Gremillion, and David Kent Savoie, Judges.

**REVERSED IN PART AND RENDERED;
AFFIRMED IN PART; REMANDED.**

**James Cleverly Klick**
**Joseph E. (Jed) Cain**
**Mikalia M. Kott**
**Danielle T. Hufft**
**Herman, Herman & Katz**
**820 O'Keefe Avenue**
**New Orleans, LA 70113**
**(504) 581-4892**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Tommie Hebert**
    **Melissa Anne Hebert**

**Joseph R. Joy, III**
**Jospeh Joy & Assoc.**
**P. O. Box 4929**
**Lafayette, LA 70502**
**(337) 232-8123**
**COUNSEL FOR PLAINTIFFS/APPELLANTS:**
    **Melissa Anne Hebert**
    **Tommie Hebert**

**Kenneth Hugh Laborde**
**Brendan P. Doherty**
**Gieger, Laborde & Laperouse**
**701 Poydras, Ste 4800**
**New Orleans, LA 70139-4800**
**(504) 561-0400**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **J. Oran Richard**
    **Industrial Helicopters, Inc.**
    **Allianz Global Risks US InsuranceCompany**
    **Game Management, Inc.**
    **Michael David Richard**

**Charles R. Sonnier**
**Attorney at Law**
**P. O. Drawer 700**
**Abbeville, LA 70511-0700**
**(337) 893-5973**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
    **Game Management, Inc.**
    **Allianz Global Risks US InsuranceCompany**
    **Michael David Richard**
    **Industrial Helicopters, Inc.**
    **J. Oran Richard**

**SAUNDERS, JUDGE.**

Tommie and Melissa Hebert (hereafter collectively "Appellants") appeal a judgment rendered in accordance with a jury verdict in favor of defendant, Industrial Helicopters, Inc. (hereafter "Industrial"), finding that Tommie Hebert (hereafter individually "Hebert") was in the course and scope of employment with Industrial at the time of injury. For the following reasons, we reverse in part and render, affirm in part, and remand for further proceedings.

**FACTS AND PROCEDURAL HISTORY:**

On March 3, 2007, Tommie Hebert sustained severe injuries when he fell to the ground from a moving helicopter that was owned by Industrial. Industrial's principal business was aerial herbicide application. Industrial also supplied helicopters for fish and game surveys and captures. It is undisputed that, at the time of his accident, Hebert had been employed by Industrial for nearly thirty years, primarily as a commercial fuel truck driver.

The owner and president of Industrial, defendant, J. Oran Richard (hereafter "J. Oran") also owned a company named Game Management, Inc. (hereafter "GMI"). GMI leased large tracts of land for hunting, fishing, farming, and ranching in Louisiana and Texas. GMI also performed wildlife surveys in Mexico, during which it aerially tracked and captured deer.

Employees of Industrial sometimes worked for other businesses owned by J. Oran, including GMI. J.Oran testified that Hebert did work "across the board," but that he primarily drove a truck for Industrial. Defendant, Michael Richard (hereafter "Richard"), who was J. Oran's son and an employee of Industrial, asked Hebert to serve as a deer netter in Mexico for the weekend that the accident occurred.

Following the accident in Mexico, on February 28, 2008, Appellants filed a petition for damages against J. Oran Richard, Michael Richard, Industrial, GMI, and various other entities owned by J. Oran and Richard, alleging that he was not in the course and scope of his employment with Industrial when he fell from the helicopter and that he was an exclusive employee of Industrial. Several defendants were dismissed. In 2009, the remaining defendants filed a motion for summary judgment, alleging entitlement to workers' compensation immunity. The trial court granted the motion, and found that GMI was Hebert's special employer who had borrowed him from his general employer, Industrial. Under the borrowed servant doctrine and La.R.S. 23:1031(C), the trial court found that Industrial and GMI were solidarily liable for worker's compensation benefits and, therefore, were immune from suit in tort. Appellants appealed. On appeal, a panel of this court found that genuine issues of material fact precluded summary judgment, reversed the trial court's grant of summary judgment, and remanded the case to the trial court for further proceedings, explaining:

> GMI is not a borrowing employer. Further, the control by Industrial in this case renders Industrial, but not GMI, liable for workers' compensation benefits and entitled to tort immunity if Mr. Hebert was in the course and scope of his employment with Industrial at the time of his accident. Industrial states that he was not. Based upon the foregoing, the trial court erred as a matter of law in finding borrowed servant status in this case and in granting summary judgment to Defendants on that issue.

*Hebert v. Richard,* 10-1417, pp. 15-16 (La.App. 3 Cir. 7/6/11), 72 So.3d 892, 903.

Following remand, Appellants filed a motion for partial summary judgment, asserting no genuine issue of material fact existed pertaining to the issue of Industrial's immunity from tort liability under La.R.S. 23:1032, *et seq.* because Industrial judicially admitted Hebert's injuries did not occur in the course and

scope of his employment with Industrial. Appellants' motion was denied and they sought a supervisory writ, which was denied on the ground that Appellants failed to show that a remedy through an appeal would be inadequate. *Hebert v. Richard*, 14-511 (La.App. 3 Cir. 5/21/14)(unpublished opinion).

Jury trial was held on May 27, 2014. At the close of evidence, Appellants moved for a directed verdict on the issue of Hebert's employment status; the motion was denied. The jury found that Hebert was in the course and scope of his employment with Industrial at the time of the accident, that Industrial had a duty to Hebert, that the duty was breached, and that the breach was the actual cause of Hebert's injuries. The jury further found that GMI owed Hebert no legal duty. Hebert was assigned fifty-six percent fault and Industrial forty-four percent. On June 18, 2014, the trial court entered judgment in favor of Industrial based upon the jury's finding that Hebert was in the course and scope of his employment with Industrial. Appellants appealed.

In their appeal, Appellants assert the trial court erred in:

1. denying Appellants' motion for summary judgment and allowing Industrial to assert immunity as Hebert's direct employer because Industrial judicially confessed that Hebert was not in the course and scope of his employment with Industrial at the time of the accident;

2. refusing to admit as evidence Appellants' statement of uncontested facts and Industrial's statement of contested facts in which they admitted Hebert was not in the course and scope of his employment with Industrial at the time of the accident;

3. denying Appellants' motion for directed verdict relative to the issue of his employment status with Industrial at the time of the accident;

4. alternatively, in light of the trial court's errors in instructing the jury and in excluding Appellants' evidence, that the trial court should determine on the record that Industrial did not meet of its burden of proof on the issue of whether Hebert was in the course and scope of his employment with Industrial at the time of the accident; and

3

5. failing to instruct the jury on the elements of an employer-employee relationship; and

6. failing to instruct the jury to presume certain documents did not exist because they were not produced; and

7. that the jury manifestly erred in its award of special damages when the uncontroverted evidence proves that Hebert's special damages exceeded the amount awarded.

## ASSIGNMENT OF ERROR NUMBER ONE:

In its first assignment of error, Hebert asserts that the trial court erred in finding that Industrial had not judicially confessed that Hebert was not in the course and scope of his employment with Industrial at the time of the accident. By this assignment, Appellants ask that we find the trial court erred when it allowed Industrial to make arguments concerning Hebert's employment status when it alleged contrary facts in its pleadings. After review of the record, we find that Industrial judicially confessed that Hebert was not in the course and scope of his employment with Industrial at the time of the accident.

### Standard of Review on Summary Judgment

The ruling of the trial court on a motion for summary judgment is reviewed de novo. *Covington v. McNeese State Univ.*, 08-505 (La.App. 3 Cir. 11/5/08), 996 So.2d 667, *writ denied*, 09-69 (La. 3/6/09), 3 So.3d 491. The appellate court applies "the same criteria that govern a trial court's determination of a motion for summary judgment." *Breaux v. Cozy Cottages, LLC*, 14-486, p. 4 (La.App. 3 Cir. 11/12/14), 151 So. 3d 183, 187. "The summary judgment procedure is designed to secure the just, speedy, and inexpensive determination of every action. . . . The procedure is favored and shall be construed to accomplish these ends." La.Code Civ.P. art. 966(A)(2). A motion for summary judgment:

4

shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions, together with the affidavits, if any, admitted for the purposes of the motion for summary judgment, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.

La.Code Civ.P. art. 966(B)(2).

The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

La.Code Civ.P. art. 966(C)(2). An employer seeking to claim immunity from tort pursuant to La.R.S. 23:1032 bears the burden of proving entitlement. *Tilley v. Boise Cascade Corp.*, 09-1072 (La.App. 3 Cir. 3/10/10), 32 So.3d 1130, *writ denied*, 10-767 (La. 6/9/10), 38 So.3d 310. Thus, Hebert, as the movant, has the initial burden of proof on his motion for summary judgment. However, at trial, Industrial, as the employer, has the burden to prove that it is entitled to workers' compensation immunity. Thus, Industrial must have produced factual support sufficient to establish that it would be able to meet its burden of proof at trial on this issue.

**Law Applicable to Judicial Confession**

"A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact." La.Civ.Code art. 1853. A judicial confession waives the necessity of proof on the confessed issue. *Ramelow v. Bd. of Trustees of the University of*

5

*Louisiana System*, 03-1131 (La.App. 3 Cir. 3/31/04), 870 So.2d 415, *writ denied*, 04-1042 (La. 6/18/04), 888 So.2d 184; *C.T. Traina, Inc. v. Sunshine Plaza, Inc.*, 03-1003 (La. 12/3/03), 861 So.2d 156. "A declaration made by a party's attorney or mandatary has the same effect as one made by the party himself." *Traina, Inc.*, 861 So.2d at 159 (citing La. Civ.Code art. 1853, cmt. (b)). To constitute a judicial confession, the party's statement must be an express acknowledgement of an adverse fact. *Wood v. Fontenot*, 04-1174 (La.App. 3 Cir. 3/2/05), 896 So.2d 323, *writ denied sub nom. City of New Iberia v. New Iberia Fire & Police Civil Serv. Bd.*, 05-801 (La. 5/13/05), 902 So.2d 1023. Additionally, the non-confessing party "'must have believed the fact was no longer at issue or must have relied on it, to his detriment.'" *Opti-Flow, LLC v. Prod. Servs. Int'l, Ltd.*, 04-1357, p. 4 (La.App. 3 Cir. 6/1/05), 903 So.2d 1171, 1174, *writ denied*, 05-1748 (La. 1/13/06), 920 So.2d 240 (quoting *State v. Lamb*, 31,919, p. 4 (La.App. 2 Cir. 5/7/99), 732 So.2d 1270, 1272). "A judicial confession is binding on the court and must be applied in the case in which it is made." *Bennett v. Porter*, 10-1088, p. 6 (La.App. 3 Cir. 3/9/11), 58 So.3d 663, 669.

### Discussion

Industrial stated in multiple documents filed into the record that Hebert was not doing the work of Industrial but was doing the work of GMI at the time of the accident. On April 27, 2009, Defendants filed a motion for summary judgment, asserting that Industrial was Hebert's general employer and Game Management, Inc. was his special employer. In their memorandum in support of their motion for summary judgment, Defendants stated (emphasis added)(citations omitted):

> Indeed, Hebert testified that during the deer netting operation he still considered himself to be working for Industrial Helicopters. Exhibit C, p. 84. As is discussed above, during his 30 years of employment

6

with Industrial Helicopters, Hebert was routinely asked to perform work at or in connection with other businesses owned by the Richard family, including Game Management. He further testified that this deer netting operation was no different; all of this was considered to be part of his employment with Industrial Helicopters, and he had no problem with doing these things.

The foregoing analysis is not altered by the fact that <u>at the time of the incident, Hebert was performing the work of Game Management.</u> Defendants do not dispute, indeed it is defendants' position . . . that at the time of the incident, Hebert was the borrowed employee of Game Management, was under the control of Game Management and performing Game Management's work, pursuant to an implicit agreement with Hebert's immediate employer, Industrial Helicopters."

Both J. Oran Richard and Michael Richard described the deer netting operations in Mexico as a joint effort between Industrial Helicopters and Game Management. However, it appears that Industrial Helicopters' involvement was limited to the provision of a helicopter and pilot for these operations . . . . <u>Under these circumstances, it must be concluded that Game Management's work was being conducted at the time of the incident.</u>

Additionally, in their supplemental memorandum in support of its motion for summary judgment, Industrial asserted: "Clearly, Hebert understood that Game Management's work was performed at the time of his injury, a fact that is confirmed by the testimony of J.O. Richard and Michael Richard." The trial court granted Industrial's motion for summary judgment, finding Hebert was the general employee of Industrial and the special employee of Game Management.

Appellants then filed a motion for rehearing or, alternatively, for new trial. In opposing Appellants' motion, Industrial stated: "[T]here is no dispute that Hebert was not doing the work of Industrial Helicopters at the time of his injury but was instead doing the work of Game Management." The trial court denied Appellants' motion.

Appellants' appealed the trial court's grant of summary judgment in favor of Industrial. In its opposition brief, Industrial again asserted (emphasis added):

Clearly, Hebert understood that <u>Game Management's work was performed at the time of his injury</u>, a fact that was confirmed by the testimony of J.O. Richard and Michael Richard.

Both J. Oran Richard and Michael Richard described the deer netting operations in Mexico as a joint effort between Industrial Helicopters and Game Management. However, Industrial Helicopters' involvement was limited to the provision of a helicopter and pilot for these operations . . . . <u>Under these circumstances, it must be concluded that Game Management's work was being conducted at the time of the incident.</u>

. . . .

<u>In this case, there is no dispute that Hebert was not doing the work of Industrial Helicopters at the time of his injury but was instead doing the work of Game Management</u> . . . . Thus, <u>plaintiffs' suggestion that Hebert was not acting in the course and scope of his employment with Industrial Helicopters is a non-issue.</u> . . .

In this court's first opinion in this case, we noted that Industrial had stated Hebert was not in the course and scope of his employment with Industrial at the time of the accident. *Hebert v. Richard*, 10-1417 (La.App. 3 Cir. 7/6/11), 72 So.3d 892. This court reversed the trial court's grant of summary judgment in favor of Industrial and remanded for further proceedings.

After remand to the trial court, Appellants filed a motion for partial summary judgment, asserting that "Industrial has admitted that Mr. Hebert's injuries did not occur in the course and scope and arising out of his employment with Industrial at the time of his injuries." In response, Industrial filed a "List of Material Facts That Are Genuinely Disputed," stating (emphasis added):

Tommie Hebert's employment duties with Industrial Helicopters were not limited to that of a commercial fuel truck driver. Nevertheless, this does not constitute a dispute as to a material fact inasmuch as <u>defendants acknowledge that Hebert was not performing the work of Industrial Helicopters at the time of his injury.</u>

And in its brief in opposition to Appellants' motion, Industrial asserted that Hebert was the borrowed employee of Game Management and stated "<u>the fact that Hebert</u>

was not in the course and scope of his employment with Industrial is not determinative of whether Industrial is entitled to immunity from tort. . . both the lending and borrowing employers are immune from suit in tort." (emphasis added). The trial court denied the motion and the suit proceeded to trial. Appellants assert this judgment was in error. We agree.

In its brief in this appeal, Industrial asserts that its multiple statements were merely part of alternative arguments and that "[Hebert's] employment status has, from the outset, been a central issue in this case." Industrial further asserts that the jurisprudence of this court requires that the statement be intended to waive the requirement of the opponent taking evidence, that the statements were not intended to do so, and that they were made for an independent purpose of supporting their primary argument that Hebert was the borrowed employee of GMI.

We conclude that the record establishes that the statements were not part of alternative arguments and that whether Hebert was in the course and scope of his employment with Industrial has not been an issue central to this case. We further conclude that Industrial made conclusive statements that were intended to remove from issue whether Hebert was doing the work of Industrial at the time of the accident and judicially confessed that Hebert was not in the course and scope of his employment with Industrial at the time of the accident. The record is replete with statements by Industrial expressly acknowledging that Hebert was not doing the work of Industrial at the time of the accident. Industrial stated so in multiple documents filed into the record. Each subsequent filing reiterated Industrial's earlier statements that Hebert was not doing the work of Industrial at the time of the accident. Only after Appellants filed a motion for summary judgment, just before trial, did Industrial attempt to retract their multiple statements, and, even

9

then, it was not on the ground of error. In fact, in its response to Appellants' motion for summary judgment, Industrial still acknowledged: "[T]his <u>does not constitute a dispute as to a material fact</u> inasmuch as <u>defendants acknowledge that Hebert was not performing the work of Industrial Helicopters</u> at the time of his injury." Moreover, in its original brief to this court, Industrial stated that whether Hebert was in the course and scope of his employment with Industrial at the time of the accident was a "non-issue." The repeated explicit acknowledgment of such an adverse fact was clearly intended to waive the opponent's requirement of taking proof to the contrary and is more than sufficient to have allowed Hebert to believe that the fact was not disputed.

Therefore, we hold that the statements made by the Industrial in multiple filings into the record and in brief to this court constitute a judicial confession that Hebert was not in the course and scope of his employment with Industrial at the time of the accident. As such, the admission "must be applied in the case in which it [was] made." *Bennet*, 58 So.3d at 669. Thus, these statements constitute proof that Hebert was not in the course and scope of his employment at the time of the accident and we accept that fact.

Based upon the foregoing, we find that there is no genuine issue of material fact concerning whether Hebert was in the course and scope of his employment with Industrial at the time of the accident and that Appellants are entitled to summary judgment as a matter of law. Accordingly, we reverse the trial court's judgment and grant Appellants' motion for summary judgment.

## ASSIGNMENT OF ERROR NUMBER TWO:

In their second assignment of error, Appellants assert the trial court erred in failing to admit into evidence Appellants' statement of uncontested facts and

10

Industrial's list of disputed facts, in which it stated that "defendants acknowledge that Hebert was not performing the work of Industrial Helicopters at the time of his injury." Although our conclusion that the trial court erred in failing to grant Appellants' motion for partial summary judgment disposes of this assignment of error, we will review this issue for the purposes of completeness and judicial efficiency.

Vast discretion lay with the trial court concerning whether to admit or exclude evidence and such a decision will not be reversed without a clear showing that the trial court abused that discretion. *State v. Simien*, 95-1407 (La.App. 3 Cir. 7/24/96), 677 So.2d 1138. "Reasonable questions as to the admissibility of evidence should be resolved in favor of receiving such evidence." *Lemoine v. Hessmer Nursing Home*, 94-836, p. 11 (La.App. 3 Cir. 3/1/95), 651 So.2d 444, 451. A judicial confession must be applied by the court in the proceeding in which it is made. *Bennet*, 58 So.3d 663. An admission made in a prior proceeding is not considered a judicial confession, but is rather an extrajudicial admission, which is generally not binding in later proceedings. *Id.* However, while not binding, extrajudicial confessions are admissible into the later proceedings as evidence. *Id.*

While we could locate no jurisprudence directly on point, if an admission made in one judicial proceeding is admissible as evidence against the party making it in a *later* judicial proceeding, it logically follows that a statement made in a current proceeding, which is determined not to rise to the level of judicial confession, and therefore, is found not to be binding, is admissible as evidence against the party making it in the proceeding in which it was made. Moreover, even an admission made *outside* of the context of a judicial proceeding is admissible as evidence if it is offered against a party and is his own statement or a

11

statement made by a person authorized to make it. *See* La.Code Evid. art. 801(D)(2). We find the excluded evidence to be of high probative value in this case. Industrial conceded throughout the litigation that Hebert was not doing the work of Industrial at the time of the accident. Just before trial, Industrial changed its position. The evidence was not cumulative and should have been admitted. Therefore, we find that the trial court committed legal error in refusing to admit Industrial's statement of contested facts. In light of the legal error, we will conduct a de novo review of the employment status issue. As we explained in *Maricle v. Liberty Mut. Ins. Co.*, 04-1149, pp. 15-16 (La.App. 3 Cir. 3/2/05), 898 So.2d 565, 576:

> when the trial court's legal error taints only one of several findings of fact by the jury, the reviewing court may give the usual deference to the untainted findings and make de novo determinations without regard to the findings of the jury as to the tainted issues.

Hebert testified concerning his employment with Industrial. In his "main job" with Industrial, as a fuel truck driver, Hebert explained he mostly "follow[ed] the helicopter [used for spraying] all over the country," "climbing up bulk tanks, filling fuel, filling chemicals, climbing down[[.]" He also explained he "plumb[ed] up pipe to run jet fuel." Notably absent is any testimony that his job duties included netting deer. Additionally, Hebert testified that he was paid a salary by Industrial and was never paid a regular paycheck by anyone other than Industrial.

Concerning whether deer netting was part of his employment, he explained (emphasis added):

Q      Now, when -- did you feel that netting was part of your job?

A      No, sir.

Q      And why is that?

12

A   It was interesting to start, but I went -- went, like, because -- the first time I ever went is because somebody couldn't go again, like Luis or somebody. He had a birthday party. I think that's the first time I ever went, something like that. And it was okay.

The first one, the first one is fun. Everybody is going to think it's fun. After the first one, it's a job, and you get your butt kicked doing it. These deer are clawing, scratching, biting, hollering. It's – it's not -- you know, it's not for everybody, you know. It's just I went to help Mike and them, and, you know, and they saw I did a good job, and when they needed somebody, they asked me back. You know, they kept asking me back when they needed somebody.

He reiterated he was merely lending a hand to persons considered his friends:

A   It's not my operation. I just -- you know, went to help somebody and ruined my life.

Q   You did it to help Mike and Oran?

A   Yeah. It was my friends, you know.

Hebert also explained that he did not get paid for deer netting, had only netted deer perhaps twice a year, that at least two times he only went because someone else was unavailable, and that "[Richard] saw the toll it was taking." Before the accident, Hebert testified that he "thought [he] was done [netting deer] for good," when he was asked to go again. Finally, he testified that he only had a passport to go to Mexico but not a visa.

Even Richard testified that his relationship with Hebert was not merely one of co-employees, explaining:

Q   Tommie trusted you with his life, didn't he?

A   Yes, sir. And I trusted him with mine.

Q   And that's good, because it was the buddy system, wasn't it?

A   We were -- we were like brothers for a long time.

13

J. Oran testified concerning the business operations at Industrial. He explained that GMI had no payroll employees, and all employees of both Industrial and GMI received payment from Industrial, "but there is at least one person that probably 99 percent of his work is for [GMI]," making clear that the two companies had separate workforces with defined roles. He explained that employees, including Hebert, often did work for the various companies he owned but that "[Hebert] did a lot of work for Industrial and did drive a truck."

Although he stated he did not keep any documents pertaining to a work visa for Hebert because any documents that may have been completed were turned into Mexican authorities, J. Oran testified that a work visa was required to work in Mexico, explaining:

> Q    When you went to Mexico, would you go on a tourist visa or on a work visa?
>
> A    Both.
>
> Q    You did both?
>
> A    I've done both, and no visa. If you don't go past a certain distance in Mexico, a visa is not required; but if you're going to work in Mexico, you can['t] just step across the border and do any kind of work you're getting paid for, you've got to have a work visa.

On de novo review of the evidence presented to the jury and the proffered evidence on this issue, we conclude that the evidence overwhelmingly establishes that Hebert was not in the course and scope of his employment with Industrial at the time of the accident. Hebert, J. Oran, and Richard all testified that Hebert primarily drove a truck for Industrial. Hebert explained that he had only gone to Mexico for deer netting a handful of times, when someone else was unavailable, that he thought he would no longer be making trips for deer netting, and that he

14

received no payment for the deer netting. No work visa for Hebert was produced. And finally, in light of all the testimony, Industrial acknowledged in its statement of contested facts that Hebert was not doing the work of Industrial at the time of the accident. Had Appellants' statement of contested facts and Industrial's statement of contested facts, in which Industrial acknowledged that "defendants acknowledge that Hebert was not performing the work of Industrial Helicopters at the time of his injury[,]" been admitted, taken with the other evidence, it is clear that Appellants' position that Hebert was not in the course and scope of employment is well-founded. Thus, we conclude that, had the jury had this evidence before them, it would have reached a different result on this issue and concluded that Hebert was not in the course and scope of his employment with Industrial at the time of the accident.

## ASSIGNMENT OF ERROR NUMBER THREE:

At the close of the evidence, Appellants moved for a directed verdict on the issue of whether Hebert was in the course and scope of his employment with Industrial at the time of the accident. The trial court denied the motion, and the case was submitted to the jury, which concluded that Hebert was in the course and scope of employment with Industrial at the time of the accident. Appellants assert that the trial court erred in failing to grant the directed verdict, excluding the jury from considering evidence pertaining to whether Hebert was in the course and scope at the time of the accident. Here again, we note that this issue is disposed of by our conclusion in assignment of error number one, but we review this argument for the purposes of completeness and judicial efficiency.

In *Hebert v. BellSouth Telecommunications, Inc.*, 01-223, pp. 4-5 (La.App. 3 Cir. 6/6/01), 787 So.2d 614, 617, *writ denied*, 01-1943 (La. 10/26/01), 799 So.2d

1145 (quoting *Busby v. St. Paul Insurance Co.*, 95-2128, pp. 16-17 (La.App. 1 Cir. 5/10/96); 673 So.2d 320, 331, *writ denied*, 96-1519 (La. 9/20/96); 679 So.2d 443)(citations omitted), we explained:

> A trial court has much discretion in determining whether or not to grant a motion for directed verdict. A motion for directed verdict is appropriately granted in a jury trial when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences are so overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. However, if there is substantial evidence opposed to the motion, that is, evidence of such quality and weight that reasonable and fair-minded jurors in the exercise of impartial judgment might reach different conclusions, the motion should be denied, and the case submitted to the jury.

> On appeal, the standard of review for directed verdicts is whether, viewing the evidence submitted, the appellate court concludes that reasonable people could not reach a contrary verdict. Furthermore, the propriety of a directed verdict must be evaluated in light of the substantive law underpinning the plaintiff's claims

The trial court's judgment denying Appellants' motion for directed verdict was prompted by an erroneous exclusion of Appellants' statement of uncontested facts and Industrial's list of disputed facts in which it stated that "defendants acknowledge that Hebert was not performing the work of Industrial Helicopters at the time of his injury." In light of this error, the trial court was precluded from determining whether reasonable persons could have reached different conclusions. Without the excluded evidence, reasonable persons could have reached different verdicts. In the instant case, Industrial had the burden of proving immunity from tort. As discussed above, we find that Appellants' evidence should have been admitted. After reviewing all of the admissible evidence, including the testimony of J. Oran, Hebert, and Richard, which we discussed above, Appellants' statement

16

of contested facts, and Industrial's statement of contested facts, in which Industrial acknowledged that "defendants acknowledge that Hebert was not performing the work of Industrial Helicopters at the time of his injury[,]" we conclude that the facts and inferences were so overwhelmingly in favor of Appellants on the issue of Hebert's employment status that reasonable people could not reach a contrary verdict. Accordingly, we find that assignment of error number three also has merit.

**ASSIGNMENTS OF ERROR NUMBER FIVE AND SIX:**

Appellants argue that the trial court erroneously failed to instruct the jury regarding the legal requirements of an employer-employee relationship. Appellants further assert that it should be presumed certain documents do not exist because they were not produced. Having decided that summary judgment should have been granted on the issue of whether Hebert was in the course and scope of employment with Industrial at the time of the accident, and, further, after reviewing all the evidence, including Appellants' statement of uncontested facts and Industrial's statement of contested facts, which were erroneously excluded, that a verdict should have been directed on the same issue, we conclude that the jury should not have decided the course and scope issue. In light of our disposition of assignments of error one, two, and three, we pretermit any discussion as to the propriety of the trial court's exclusion of the proffered jury instructions.

**ASSIGNMENT OF ERROW NUMBER FOUR:**

Appellants alternatively assert, in light of the trial court's erroneous exclusion of evidence and errors in failing to properly instruct the jury regarding the legal requirements of an employer-employee relationship and that, because Industrial failed to produce certain documents, it should be presumed the documents do not exist, that this court should find that Industrial did not carry its

17

burden of proof on the issue of Hebert's course and scope of employment with Industrial at the time of the accident. Having decided that Appellants' motion for summary judgment should have been granted on this issue and, further, after reviewing all of the evidence, including Appellants' statement of contested facts and Industrial's statement of contested facts, which were erroneously excluded from evidence, that directed verdict should have been granted, we pretermit discussion of this assignment of error.

## ASSIGNMENT OF ERROR NUMBER SEVEN:

In their final assignment of error, Appellants contend that the jury erred in awarding Hebert $1,500,000.00 in special damages when the undisputed evidence showed they amounted to no less than $1,782,826.99. We find no merit to this contention.

We explained in *Savant v. Hobby Lobby Stores, Inc.,* 12-447, p. 13 (La.App. 3 Cir. 11/7/12), 104 So.3d 567, 575:

> An award of special damages is reviewed pursuant to the manifest error standard of review, unlike a general damage award which is reviewed pursuant to the abuse of discretion standard. *Hornsby v. Bayou Jack Logging,* 03–1544 (La.App. 3 Cir. 5/5/04), 872 So.2d 1244. Thus, "[t]he adequacy or inadequacy of the award should be determined by the facts or circumstances of the case under consideration." *Id.* at 1248. The plaintiff bears the burden of proving entitlement to special damages by a preponderance of the evidence. *Id.*

The jury has vast discretion in its assessment of the appropriate amount of damages to be awarded, and its determination is entitled to great deference, which should rarely be disturbed on appeal. *Guillory v. Lee*, 09-0075 (La. 6/26/09), 16 So.3d 1104. Generally, "'uncontradicted expert testimony should be accepted as true." *Prestridge v. Bank of Jena*, 05-545, p. 18 (La.App. 3 Cir. 3/8/06), 924 So.2d 1266, 1278, *writ denied*, 06-0836 (La. 6/2/06), 929 So.2d 1261. However, "'[e]ven

uncontradicted expert testimony is not binding on the factfinder.'" *Id.* at 1278 (quoting *Penton v. Healy*, 04-1470, p. 4 (La.App. 4 Cir. 1/26/05), 894 So.2d 537, 540, *writ denied*, 05-0975 (La. 6/3/05), 903 So.2d 463). The factfinder has the discretion to accept or reject expert testimony and to determine the amount of weight it may be due. *Id.* As our supreme court explained in *Ryan v. Zurich Am. Ins. Co.*, 07-2312, p. 13 (La. 7/1/08), 988 So.2d 214, 222 (citations omitted):

> "A fact finder may accept or reject the opinion expressed by an expert, in whole or in part." "The trier of fact may substitute common sense and judgment for that of an expert witness when such a substitution appears warranted on the record as a whole."

Appellants contend the jury was obliged to award the amount of $526,485.00 for Hebert's future medical needs, which Dr. Womack found to be the present value calculation for the Conservant Plan of Care prepared by Dr. Gorman, a certified life care planner, in consultation with Dr. Savant, a neurologist and psychiatrist. As an initial matter, in considering the weight to be accorded to the Life Care Plan prepared by these experts, the jury could reasonably have taken into consideration the fact that Drs. Gorman and Savant were paid experts hired for litigation purposes. Moreover, based on the evidence at trial, the jury could have reasonably concluded that Appellants had not proven by a preponderance of the evidence that certain expenses set forth in the Life Care Plan would be incurred in the future.

The Conservant Plan included $170,000.00 for a revision of Hebert's lumbar spine surgery. However, Hebert's treating orthopedic surgeon, Dr. Muldowney, testified that "it's just not moving dramatically enough for us to say with certainty that it's not healed, or it could be healed and it's just the fact that he's had a broken back." He explained that further tests would be needed to determine whether the

surgery had not healed and that the "next step would be predicated on that." He explained that if further diagnostic testing revealed the surgery had healed, "then a spinal cord stimulator would be the next step." If further testing revealed the surgery had not healed, then "he would be a candidate for another operation." Additionally, although Dr. Muldowney testified that Hebert would more probably than not need a revision surgery or a spinal cord stimulator, he further testified that Hebert was "resistant to having anything else done right now" and that Hebert's resistance was the reason no further diagnostic testing had been done. In his testimony, Dr. Lindemann, Hebert's physical medicine and rehabilitation doctor, acknowledged that Hebert had consistently advised him he was not interested in any further operations on his back, although he stated that "it may be inevitable" in the future. In his testimony, Hebert himself expressed a strong hesitancy towards having another operation on his back. In light of the foregoing, the jury may have reasonably concluded that Hebert would not undergo another surgery on his back. Accordingly, we find no error by the jury in failing to award damages to Hebert for a surgery the jury could have reasonably concluded he may not have.

The Conservant Plan of Care also included $40,000.00 for a right hip replacement surgery. However, Dr. Muldowney did not testify that Hebert would more probably than not require a hip replacement. In fact, his testimony on this issue was equivocal, as he explained that Hebert appeared to be developing post-traumatic arthritis in the hip "which may eventually require a hip replacement or something like that." Further, Dr. Muldowney's testimony of causation was equivocal; he testified that the hip problem was a recent development at the time of the May 2014 trial, and that it was his "assumption" that there was an injury that "may have caused or initiated" a degenerative process. Thus, the jury could have

20

reasonably concluded either that it was not more probable than not that Hebert would need the hip replacement surgery, or that Hebert had not shown that the hip degeneration was caused by accident at issue. Thus, the jury could not have manifestly erred in failing to award damages for a surgery Hebert may not have or for an injury that may not have been caused by the accident at issue.

The Conservant Plan also included the sum of $110,355.00 allocated to future diagnostic testing. This sum included amounts for MRIs of Hebert's knees, hips, and pelvis. However, Dr. Lindemann testified that he had not ordered MRIs for Hebert's knees and that Hebert had not recently complained of any knee pain. Moreover, he testified only that Hebert "may" require an MRI of his right hip in the future. Additionally, this figure included amounts for an EMG. However, Dr. Lindemann again testified an EMG only "may be needed in the future. . . .At this point, he may not need it. At a later point in time, he may need that." Additionally, Dr. Lindemann acknowledged that Hebert had already had an EMG, which was negative and that a negative EMG was "good." Again, given the above, the jury could have reasonably concluded that it was not more probable than not that Hebert would need these diagnostic procedures performed in the future.

Appellants include in their assessment of special damages the sum of $473,359.00 for future lost wages and benefits, which assumed that Hebert is permanently and totally disabled and would be unable to return to any type of employment in the future. However, although both Dr. Muldowney and Dr. Lindemann did express the belief that Hebert was permanently disabled, Dr. Lindemann described Hebert as a dedicated employee who would like to get back to work. Moreover, testimony showed that Hebert returned to work at Industrial approximately nine months after the accident and worked for over a year doing

21

light duty work, including paperwork and running errands. Further, Hebert and his wife Melissa testified as to things he continued to do around the house, such as pulling weeds, cutting the grass with a riding lawn mower, and fixing small appliances like the toaster or icemaker, with Hebert describing himself as "mechanically inclined." While Hebert testified that he could not go back to his old job because of the physical demands, he stated that "[y]ou know, I'm not a lazy person. I like to work. I love to work, you know." Based on this evidence, the jury could have reasonably concluded that Hebert would try to go back to work part-time in a light-duty capacity. Thus, they could have reasonably reduced the award accordingly.

Given the evidence above, the jury could reasonably have found that Hebert would not incur all of the expenses listed in the Conservant Plan or sustain a complete loss of future wages and benefits. Based on the foregoing, we find the record provides the jury with a reasonable basis to exclude certain expenses associated with Hebert's future medical care and lost wages. Thus, we find that the jury was within its vast discretion in awarding the sum of $1,500,000.00 in special damages to Appellants. Because the jury could have reasonably awarded this amount, there was no manifest error. Accordingly, we find this assignment of error is without merit. Therefore, we affirm the verdict of the jury in this respect.

**OFFSET:**

Finally, we note from the record that Industrial has paid a substantial amount to Hebert in workers' compensation. Although this issue was not briefed, it appears from the record that either Industrial or insurer may be entitled to a reimbursement or offset for the amounts already paid.

As this court explained in *State, Dep't of Transp. & Dev. v. Campbell*, 617 So.2d 1224, 1227 (La.App. 3 Cir. 1993):

> The authority of an appellate court to remand an action to the trial court for consideration of an issue is derived from LSA-C.C.P. Art. 2164 which states:
>
> > "The appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. . . ."
>
> Louisiana jurisprudence has interpreted this article to empower an appellate court to remand a case for the consideration of new evidence. *Jones v. LeDay*, 373 So.2d 787 (La.App. 3rd Cir.1979) and cases cited therein. Elaborating in *Jones*, we stated at page 789:
>
> > "However, although an appellate court is empowered to remand a case, . . . for the introduction of additional evidence, such a procedure is sparingly exercised. Although a court should always remand a case whenever the nature and extent of the proceedings dictate such a course, nevertheless, whether or not any particular case should be remanded is a matter which is vested largely within that court's discretion and such power to remand should be exercised only according to the peculiar circumstances presented in each individual case." (Citations omitted.)

Thus, in the interest of justice, we remand to the trial court to take evidence on and to determine whether any party is entitled to an offset.

## CONCLUSION

In light of the foregoing, we reverse the judgment of the trial denying Appellants' motion for summary judgment and grant Appellants' motion. We also reverse the judgment of the trial excluding from evidence Appellants' statement of uncontested facts and Industrial's statement of contested facts render judgment that Hebert was not in the course and scope of his employment with Industrial at the time of the accident. We reverse the judgment of the trial court denying Appellants' motion for directed verdict and render judgment that Hebert was not in

the course and scope of his employment with Industrial at the time of the accident. We affirm the verdict of the jury awarding Appellants $1,500,000.00 in special damages. We remand the case to the trial court to determine whether either Industrial or its insurer may be entitled to an offset for workers' compensation benefits already paid.

**REVERSED IN PART AND RENDERED; AFFIRMED IN PART; REMANDED.**