STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT


15-795


KP AUTO SALES, INC.

VERSUS

ADG, LLC


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
FOURTEENTH JUDICIAL DISTRICT COURT
PARISH OF CALCASIEU, NO. 2011-3724
HONORABLE SHARON D. WILSON, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**ELIZABETH A. PICKETT**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John D. Saunders, Elizabeth A. Pickett, and John E. Conery, Judges.


**REVERSED IN PART; AFFIRMED IN PART; AND
REMANDED FOR FURTHER PROCEEDINGS.**


J. Michael Veron
VERON, BICE, PARLEMO & WILSON, LLC.
P. O. Box 2125
Lake Charles, LA 70602-2125
(337) 310-1600
COUNSEL FOR PLAINTIFF-APPELLEE:
    KP Auto Sales, Inc.
    Kenneth Phipps

**Todd S. Clemons**
**TODD S. CLEMONS & ASSOCIATES**
**1740 Ryan Street**
**Lake Charles, LA 70601**
**(337) 477-0000**
**COUNSEL FOR PLAINTIFF-APPELLEE:**
**KP Auto Sales, Inc.**
**Kenneth Phipps**

**Scott James Scofield**
**Andrea Albright Crawford**
**Scofield, Gerard,Gallaugher & Landry**
**P. O. Drawer 3028**
**Lake Charles, LA 70602**
**(337) 433-9436**
**COUNSEL FOR DEFENDANT-APPELLANT:**
**ADG, LLC**
**TRP, LLC**

**PICKETT, Judge.**

The primary issue in this appeal is a lessee's duty to repair damages to commercial rental property resulting from the effects of Hurricane Rita on September 24, 2005. The lessor of the property appeals the trial court's grant of summary judgment dismissing its claims against the lessee and denial of its motion for summary judgment against the lessee. For the following reasons, the trial court's grant of summary judgment in favor of the lessee is reversed, and the denial of summary judgment in favor of the lessor is reversed in part and affirmed in part. The matter is remanded to the trial court for further proceedings.

## FACTS

Before 2005, ADG, LLC, owned and operated several car dealerships at 2616 Ryan Street in Lake Charles. TRP, LLC, owned and continues to own the premises where the car dealerships operated ("Leased Premises"). In a series of contracts, on February 28, 2005, TRP leased the premises to ADG, which immediately assigned the Lease to K.P. Auto Sales, Inc. TRP and ADG are owned by Paul Abraham.[1] Kenneth Phipps, the owner and operator of K.P. Auto Sales, Inc., unconditionally guaranteed the performance of K.P. Auto's Lease obligations owed to TRP. Pursuant to various contracts,[2] the Leased Premises remained leased to and in the possession and control of entities owned and operated by Mr. Phipps,

---

[1] Throughout this opinion, TRP may be used to reference TRP individually or TRP, ADG, and Mr. Abraham, in globo, unless the discussion requires reference to one party individually.

[2] These agreements include the Lease Assignment, a Management Agreement between TRP and ADG related to the operation of a General Motors dealership on the Leased Premises, an Assignment of Management Agreement by ADG to K.P. Auto, and an Amended Management Agreement also assigned to K.P. Auto.

i.e., K.P. Auto and KPGM, from February 2005 through July 2010. Mr. Phipps guaranteed each contract executed by these entities.[3]

In September 2005, the Leased Premises were damaged by Hurricane Rita. K.P. Auto immediately cleaned the premises and performed some repairs that allowed it to reopen for business as soon as possible. K.P. Auto maintained property insurance on the Leased Premises as required by the Lease. An issue arose between K.P. Auto and its insurer as to the extent of the damages caused by Hurricane Rita to the Leased Premises and the amounts owed by the insurer to K.P. Auto to repair those damages. K.P. Auto filed suit against its insurer in September 24, 2007. The Hurricane Litigation was resolved by a settlement between K.P. Auto and its insurer dated October 7, 2008.

Pursuant to an oral agreement between Paul Abraham and Mr. Phipps during the term of the Lease, K.P. Auto would pay ADG the ad valorem taxes owed on the Leased Premises. ADG would pay the ad valorem tax and seek a credit on its annual taxes. Upon receiving a refund for the tax credit, ADG would reimburse K.P. Auto. Near, or shortly after, the end of the Lease term, Mr. Abraham realized that ADG had reimbursed K.P. Auto more than the total of the tax refunds it received. ADG sought to offset those overpayments against the last reimbursement owed to K.P. Auto under the oral agreement.

The parties' accountants reviewed the tax documentation and determined the amount of the offset owed to ADG. That did not resolve the dispute, however, because Mr. Abraham would not agree to issue the refund until K.P. Auto provided the information he requested regarding K.P. Auto's insurance claim.

_____

[3] Throughout this opinion, K.P. Auto may be used to reference K.P. Auto individually or K.P. Auto, KPGM, and Mr. Phipps, in globo, unless the discussion requires reference to one party individually.

2

In August 2011, K.P. Auto filed suit against ADG to recover the tax refund it claimed it was owed under the oral agreement. ADG answered the suit and reconvened against K.P. Auto and also asserted third party claims against Mr. Phipps for repairs required to return the Leased Premises to the condition it was in before being damaged by Hurricane Rita. TRP joined in the litigation and filed a demand seeking the same damages against K.P. Auto and Mr. Phipps.

On September 8, 2014, K.P. Auto filed an Exception of No Cause of Action, Motion for Partial Summary Judgment, and/or Motion in Limine Regarding Measure of Damages and Collateral Source. In November 2014, TRP filed a Motion for Summary Judgment or in the Alternative, Motion for Partial Summary Judgment. Thereafter, K.P. Auto filed a Motion for a Pretrial Hearing to exclude the testimony of Gary Wiener, TRP's expert witness on the issue of damages Hurricane Rita caused to the Leased Premises. A hearing was held on the exception and these motions on April 7, 2015. At the conclusion of the hearing, the trial court denied K.P. Auto's exception of no cause of action but granted its motions for summary judgment against TRP and ADG, dismissing their reconventional and third-party demands. The trial court denied TRP's motion for partial summary judgment. The trial court further determined that the rulings on the motions for summary judgment rendered other pending motions moot. Finally, the trial court found no just reason for delay existed and designated and certified the judgment as a final judgment pursuant to La.Code Civ.P. art. 1915(B).

ADG and TRP appealed. Upon receiving the appeal record, counsel for K.P. Auto and Mr. Phipps realized its motion to exclude the testimony of Mr. Wiener was not in the record, and they filed a motion to supplement the record. ADG and TRP filed a motion to strike the motion to supplement. As a matter of procedure,

the record was supplemented because all the pleadings filed in the trial court were not included in the appellate record. ADG and TRP filed a motion requesting that this court disregard the content of the motion to exclude Mr. Wiener's testimony because it was not ruled upon by the trial court.

## ASSIGMENTS OF ERROR

ADG and TRP assign the following errors with the trial court's rulings:

1. The trial court erred as a matter of law in holding that fairness and the collateral source doctrine somehow bars TRP from introducing judicial and extra judicial admissions, facts regarding a settlement agreement, and other evidence from the 2007 Hurricane Litigation between K.P. Auto and its insurer to show that K.P. Auto unquestionably breached its contractual agreements to TRP by failing to properly repair the Leased Premises.

2. The trial court erred in granting summary judgment against TRP because K.P. Auto did not move for summary judgment against TRP, the actual owner of the Leased Premises.

3. The trial court erred in granting summary judgment in favor of K.P. Auto because the undisputed facts show that K.P. Auto and Phipps breached their direct contractual obligations owed to TRP to fully repair hurricane damage to the Leased Premises, leaving $480,982.56 in unrepaired damages in 2014 dollars.

4. The trial court erred in denying TRP's motion for partial summary judgment because there is no genuine issue of material fact that K.P. Auto and Phipps breached their direct contractual obligations to fully repair hurricane damage to the Leased Premises, leaving $480,982.56 in unrepaired damages, and thereby entitling TRP to partial summary judgment in this amount, plus contractual interest from date of breach, all court costs, and related charges, and remand for a determination of contract-based attorney fees, costs, and charges.

## MOTIONS FOR SUMMARY JUDGMENT

A reviewing court examines summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Smith v. Our Lady of the Lake Hospital, Inc.*, 93-2512 (La. 7/5/94),

4

639 So.2d 730, 750. Accordingly, we ask the same questions the trial court does in determining whether summary judgment is appropriate: is there any genuine issue of material fact and is the mover entitled to judgment as a matter of law. *Id.*; La.Code Civ.P. art. 966(B)(2).

The parties' burdens of proof on motions for summary judgment are set forth in La.Code Civ.P. art. 966(C)(2) which provides:

> The burden of proof remains with the movant. However, if the movant will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the movant's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. Thereafter, if the adverse party fails to produce factual support sufficient to establish that he will be able to satisfy his evidentiary burden of proof at trial, there is no genuine issue of material fact.

Evidence that can be considered on a motion for summary judgment is governed by La.Code Civ.P. art. 966(F)(2) which states, in pertinent part:

> Evidence cited in and attached to the motion for summary judgment or memorandum filed by an adverse party is deemed admitted for purposes of the motion for summary judgment unless excluded in response to an objection made in accordance with Subparagraph (3) of this Paragraph. Only evidence admitted for purposes of the motion for summary judgment may be considered by the court in its ruling on the motion.

Interpretation of an insurance contract is usually a legal question which can be properly resolved in the framework of a motion for summary judgment. *Sanchez v. Callegan*, 99-137, p. 5 (La.App. 1 Cir. 2/18/00), 753 So.2d 403, 405.

## CONTRACT INTERPRETATION

"Contracts have the effect of law for the parties," and the "[i]nterpretation of a contract is the determination of the common intent of the parties." La.Civ.Code arts. 1983 and 2045, respectively. The words of the contract must be examined to

determine the reasonable intention of the parties; intent cannot be assumed. *Prejean v. Guillory*, 10-740 (La. 7/2/10), 38 So.3d 274. Importantly, "[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046. "Common intent is determined, therefore, in accordance with the general, ordinary, plain and popular meaning of the words used in the contract." *Prejean*, 38 So.3d at 279. When a clause in a contract is clear and unambiguous, its meaning should not be disregarded under the pretext of pursuing its spirit. *Id.* Courts cannot manipulate the meaning of the words of a contract to make them harmonize with a supposed reasonable intention of the parties. *Id.* "The words of a contract must be given their generally prevailing meaning." La.Civ.Code art. 2047. Moreover, a contract provision that is susceptible to different meanings "must be interpreted with a meaning that renders the provision effective and not with one that renders it ineffective." La.Civ.Code art. 2049. "Each provision in a contract must be interpreted in light of the other provisions so that each is given the meaning suggested by the contract as a whole." La.Civ.Code art. 2050.

When interpreting contracts, specific provisions govern general provisions. *Corbello v. Iowa Production*, 02-826 (La. 2/25/03), 850 So.2d 686. Lastly, parties to a contract must perform the obligations imposed by the contract in good faith. La.Civ.Code art. 1983.

## DISCUSSION

*Did the trial court err in granting summary judgment dismissing TRP and ADG's claims against K.P. Auto on the basis that the evidence relied upon by TRP and ADG was inadmissible?*

In its motion for summary judgment, K.P. Auto asserts that ADG and TRP can not satisfy their burden of proof because their evidence they rely on to do so is irrelevant and inadmissible. The evidence at issue consists of: 1) statements made by K.P. Auto, its principal, and others, including, its expert witnesses and its insurer and 2) the settlement agreement K.P. Auto and its insurer executed to conclude the Hurricane Litigation.

The statements at issue pertain to K.P. Auto's claim for damages against its insurer. The trial court agreed with K.P. Auto that TRP could not use evidence K.P. Auto used in its case against its insurer to satisfy its burden of proof against K.P. Auto. TRP contends the trial court erred in granting summary judgment in favor of K.P. Auto because the statements show that the Leased Premises sustained significant windstorm damage that K.P. Auto did not repair.

Generally, to be admissible, evidence must be relevant and not unduly prejudicial. La.Code Evid. arts. 104; 401–403. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." La.Code Evid. art. 401. Relevant evidence is admissible, unless it is specifically excluded by law. La.Code Evid. art. 402. Relevant evidence may be excluded if it is prejudicial or may cause confusion, delay, or waste time. La.Code Evid. art. 403.

TRP contends the statements made in the Hurricane Litigation are extrajudicial confessions that are admissible in this proceeding. Such statements made in an earlier litigation by one party was at issue in *Hebert v. Richard*, 15-8 (La.App. 3 Cir. 6/17/15), 166 So.3d 1265, *writs denied*, 15-1390, 15-1391 (La. 10/2/15), __ So.3d __, __ So.3d __, 2015 WL 6114221, 2015 WL 6114224. The court discussed the admissibility of the statements and explained:

> Vast discretion lay with the trial court concerning whether to admit or exclude evidence and such a decision will not be reversed without a clear showing that the trial court abused that discretion. "Reasonable questions as to the admissibility of evidence should be resolved in favor of receiving such evidence." A judicial confession must be applied by the court in the proceeding in which it is made. An admission made in a prior proceeding is not considered a judicial confession, but is rather an extrajudicial admission, which is generally not binding in later proceedings. However, while not binding, extrajudicial confessions are admissible into later proceedings as evidence.

> While we could locate no jurisprudence directly on point, if an admission made in one judicial proceeding is admissible as evidence against the party making it in a *later* judicial proceeding, it logically follows that a statement made in a current proceeding, which is determined not to rise to the level of judicial confession, and therefore, is found not to be binding, is admissible as evidence against the party making it in the proceeding in which it was made. Moreover, even an admission made *outside* of the context of a judicial proceeding is admissible as evidence it is offered against a party and is his own statement or a statement made by a person authorized to make it. *See* La.Code Evid. art. 801(D)(2).[4] We find the excluded evidence to be of high probative value in this case. . . . Therefore, we find that the trial court committed legal error in refusing to admit industrial's statement of contested facts.

---

[4] Louisiana Code of Evidence Article 801(D)(2) provides that the following are not hearsay:

  Personal, adoptive, and authorized admissions. The statement is offered against a party and is:
    (a) His own statement, in either his individual or a representative capacity;
    (b) A statement of which he has manifested his adoption or belief in its truth; or
    (c) A statement by a person authorized by him to make a statement concerning the subject.

*Id.* at 1274-75 (case citations omitted). Extrajudicial admissions are admissible, but they do not "create conclusive a presumption or operate as estoppel against the party making them, absent a showing of deception or prejudice." *Bennett v. Porter*, 10-1088, p. 6 (La.App. 3 Cir. 3/9/11), 58 So.3d 663, 669.

As in *Hebert*, the statements at issue here are relevant to TRP's claims against K.P. Auto and have high probative value. Accordingly, we find the evidence K.P. Auto used to prove its claim for damages against its insurer in the Hurricane Litigation are relevant and admissible to prove TRP's claims here. TRP's claims are essentially the same as the claims K.P. Auto had to prove in the Hurricane Litigation. Importantly, the admissions will be useful to the trier of fact to determine whether TRP carries its burden of proof. Contrary to K.P. Auto's contention, because an extrajudicial admission is not a judicial confession, it need not be a declaration against interest. *Id.*

For these reasons, we conclude the trial court abused its discretion and erred in refusing to admit into evidence the extrajudicial statements made by K.P. Auto, its representatives, experts, and insurer in the Hurricane Litigation and to consider them on TRP's behalf in its opposition to K.P. Auto's motion for summary judgment.

TRP also complains of the trial court's holding that it cannot use information contained in the Settlement Agreement/Receipt and Release executed by K.P. Auto and its insurer to prove its claims against K.P. Auto. It asserts that the Settlement Receipt and Release shows K.P. Auto was paid money for damages to the Leased Premises it claimed were caused by Hurricane Rita but failed to perform the repairs. K.P. Auto urges that no information contained in the settlement is admissible pursuant to La.Code Evid. art. 413. Article 413 provides: "Any

amount paid in settlement or by tender shall not be admitted into evidence unless the failure to make a settlement or tender is an issue in the case."

In *Alexander v. Tate*, 09-844 (La.App. 3 Cir. 2/3/10), 30 So.3d 1122, the plaintiff sought to introduce evidence of a settlement he made to show the jury that injuries he received in an accident after the one being tried were less serious than the injuries he received in the first accident and that the injuries he suffered in the second accident resolved before the trial on the first accident. Citing Article 413, the defendants objected to the admission of the settlement information. The trial court allowed the evidence. This court affirmed that ruling after contrasting the situation presented in *Calcagno v. Gonzales*, 99-287 (La.App. 5 Cir. 10/13/99), 802 So.2d 643, to the situation presented by Mr. Alexander's request.

In *Calcagno*, the trial court allowed an uninsured motorist insurer to introduce the amounts of unconditional tenders it made to two of its insureds prior to trial. On appeal, the fifth circuit determined that based on the jury's damage awards it was likely the jury considered those tenders in making its damage awards to the plaintiffs and concluded the trial court erred in allowing the unconditional tenders to be introduced. Mr. Alexander did not want to use the settlement to prove the amount of damages but to show that injuries in the second accident were minimal and resolved with treatment. Admission of the settlement for that limited purpose was held to be proper.

In *Alexander*, 30 So.3d at 1130, we discussed the interplay of La.Code Evid. art. 413 and 408(A), stating:

> Mr. Alexander urges that Article 413 should be read in conjunction with La.Code Evid. art. 408(A), which prohibits the admission of evidence concerning compromise or offers to compromise a disputed claim "to prove liability for or invalidity of the claim or its amount" but does not prohibit evidence that is otherwise

admissible "because it is presented in the course of compromise negotiations" or when "the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." La.Code Evid. art. 408(A).

Mr. Alexander relied on comments made by the authors of the "Handbook on Louisiana Evidence Law" concerning Article 413:

> This Article was particularly designed to protect a plaintiff in a personal injury suit from the introduction of evidence that would inform the jury of the amount plaintiff received in settlement from other alleged tortfeasors, or the amount received by other claimants in settlement of their claims against the defendant, when the purpose of such evidence is to minimize the value of plaintiff's claim, or suggests that he has already received adequate compensation.

> GEORGE W. PUGH, ROBERT FORCE, GERALD A. RAULT, JR., AND KERRY TRICHE, HANDBOOK ON LOUISIANA EVIDENCE LAW, 410 (2008 ed.). The authors then correlate Article 413 to Article 408, explaining that while Article 408 excludes evidence of settlements for the limited purpose of "proving or disproving liability or amount thereof," Article 413 is written in broader terms than Article 408 and that it 'seemingly mak[es] evidence of settlements . . . inadmissible for any purpose." *Id.* The authors continue, however, noting: "It is believed that [Article 413] should not be given such broad scope, and where the amount paid in settlement or tender has a relevance independent of its tacitly forbidden use, it should be held admissible, subject, of course, to the balancing test of Article 403." *Id.*

*Alexander*, 30 So.3d at 1130.

The court went on to note that no federal rule of evidence exists that is comparable to Article 413, but Federal Rule of Evidence 408 and La.Code Evid. art. 408 are comparable. Jurisprudence under Rule 408 holds that settlement terms pertaining to another dispute or litigation may be admissible to assist the trier of fact in understanding the case. *See Uforma/Shelby Business Forms, Inc. v. NLRB*, 111 F.3d 1284 (6th Cir.1997); *Bradbury v. Phillips Petroleum Co.*, 815 F.2d 1356 (10th Cir.1987).

11

In *Alexander*, this court affirmed the trial court's admission of the settlement information in evidence because: (1) the settlement of the second accident did not involve the parties to the litigation being tried, and (2) the settlement was relevant as to the severity of the injuries Mr. Alexander sustained in that accident. In *Uforma/Shelby Business Forms, Inc. v. NLRB*, 111 F.3d 1284, 1293-94 (6th Cir.1997) (citation omitted), the court observed that "Rule 408 only bars the use of compromise evidence to prove the validity or invalidity of the claim that was the subject of the compromise, not some other claim." The court concluded however: "Evidence of the compromise of a claim different than the claim currently in dispute therefore is admissible unless 'the compromise evidence require[s] an inference as to the offeror's belief concerning the validity or invalidity of the compromised claim." *Id*. at 1294.

The settlement between K.P. Auto and its insurer is different as to the parties, but the claim in dispute is essentially the same in this litigation as it was in the Hurricane Litigation. Moreover, TRP's use of the compromise evidence clearly involves an inference that the compromise of the Hurricane Litigation was valid. Accordingly, the trial court did not err in denying admissibility of the settlement.

TRP also argues that the trial court erred in concluding that the collateral source rule prohibited TRP's use of the extrajudicial statements discussed above and the settlement agreement from the Hurricane Litigation. For the following reasons, we agree.

In *Cutsinger v. Redfern*, 08-2607, p. 11 (La. 5/22/09), 12 So.3d 945, 952, the supreme court addressed the application of the collateral source rule:

The rule provides that "a tortfeasor may not benefit, and an injured plaintiff's tort recovery may not be reduced, because of monies received by the plaintiff from sources independent of the tortfeasor's procuration or contribution." The primary policy reason for the application of the collateral source rule is tort deterrence. The rule reflects the beliefs that the tortfeasor should not profit from the victim's prudence in obtaining insurance, and that by reducing the amount the tortfeasor would have to pay, the deterrent effect of the law would be hampered.

The court provided two guiding principles for determining whether the collateral source rule applies: "(1) whether application of the rule will further the major policy goal of tort deterrence; and (2) whether the victim, by having a collateral source available as a source of recovery, either paid for such benefit or suffered some diminution in his patrimony because of the availability of the benefit such that no actual double recovery would result from application of the rule." *Id.* at 953.

A tort is not at issue here; therefore, the first principle does not apply. The second principle also does not apply because the purchase of insurance for damage to the Leased Premises was required by the Lease. Moreover, the Property Insurance provision required K.P. Auto to keep the Leased Premises insured "with an all risks property damage insurance containing standard replacement cost provisions" and provide proof of the insurance to TRP. The Property Insurance provision also provides: "In the event the Leased Premises is damaged by fire, windstorm, or other casualty, Tenant shall forthwith proceed to repair such damage and restore the Leased Premises to substantially its condition at the time of such damage occurrence." This same statement is made in the Fire and Other Casualty provision. Its use here indicates that the parties contemplated the property insurance would be used to repair damage to the Leased Premises caused by fire, windstorm, or other casualty.

In summary, evidence of K.P. Auto's property insurance is admissible and extra-judicial statements made by K.P. Auto, its representatives, expert witnesses, and insurer in the Hurricane Litigation are admissible, but the Hurricane Litigation settlement is not.

**_Did the trial court err in granting summary judgment against TRP, the owner of the Leased Premises, when K.P. Auto did not move for summary judgment against TRP?_**

TRP urges that the trial court erred in granting summary judgment against it because no party moved for summary judgment against it or for dismissal of its third-party demand. The plaintiffs named only one defendant in their petition, ADG. They filed a First Supplemental and Amending Petition seeking to recover money K.P. Auto spent or repairs made to the Leased Premises. No additional party or parties, namely, TRP, was added as a defendant. In their Exception of No Cause of Action, Motion for Partial Summary Judgment, and Motion in Limine, K.P. Auto referenced "the defendant, ADG, LLC" at one point in the motion. Throughout the remainder of the motion references "the defendant," and the "Landlord/defendant" at times.

K,P. Auto cites _First National Bank of Commerce v. Houston_, 605 So.2d 1 (La.App. 2 Cir. 1992), to support the trial court's ruling. In _Houston_, a defendant named in the litigation argued that summary judgment was not properly granted against her because her name was omitted from the caption of the pleading. The court held that omission of the defendant's name from the caption on the motion for summary judgment was harmless error because it was included in the body of the petition and motion for summary judgment. The error was held to be harmless.

_Houston_ has no application here because TRP has not been made a defendant by K.P. Auto and was not named or mentioned in K.P. Auto's motion

for summary judgment. Therefore, the trial court erred in granting a judgment against it.

***Did the trial court err in granting summary judgment in favor of K.P. Auto?***

ADG and TRP argue that there are genuine issues of material fact showing that K.P. Auto and Phipps breached their obligations to repair hurricane damage to the Leased Premises; therefore, the trial court's grant of summary judgment in favor of K.P. Auto is improper.

K.P. Auto contends that pursuant to the Maintenance provision of the Lease, ADG and TRP must show what condition the Leased Premises was at the time K.P. Auto took possession of the Leased Premises. The Maintenance provision (emphasis added) provides:

MAINTENANCE

Tenant shall maintain and keep in good repair all portions of the Leased Premises and the improvements located thereon, including but not limited to the foundation, roof, structural supports, exterior walls, doors, window glass, plate glass, and also all water, sewage, and electric service facilities, and also all interior walls, ceilings, floors, floor coverings, wiring, plumbing, pipes, conduits and other utility fixtures. Tenant shall repair, service and maintain, and replace if necessary, all heating and air conditioning equipment and appurtenances thereto, including also all repairs and replacement of parts.

Tenant also agrees to repair or replace any damage or injury done to the Leased, Premises, or any part thereof, caused by Tenant or Tenants agents, employees, officers, licensees, invitees, customers, clients, or visitors; provided, however, if Tenant fails to make such repairs or replacements promptly, Landlord may, at Landlord's option, make such repairs or replacements, and Tenant shall pay the cost thereof to Landlord on demand. Tenant agrees not to commit or allow any waste or damage to be committed on any portion, of the Leased premises, and at the termination of this lease, by lapse of time or otherwise, *to deliver up the Leased Premises to Landlord in as good condition as on date of possession by Tenant, except for ordinary wear and tear.* Upon such termination of this lease, Landlord

shall have the right to reenter and resume possession of the Leased Premises.

TRP argues that its burden of proof is set forth in the Lease's Fire and Other Casualty provision (emphasis added) which provides:

## FIRE AND OTHER CASUALTY

In the event the Leased Premises is damaged by fire, windstorm, or other casualty Tenant shall forthwith proceed to repair such damage and restore the Leased Premises to substantially its condition *at the time of such damage occurrence.*

Although this provision specifically addresses ADG and TRP's claims, K.P. Auto argues it is subsumed by the Maintenance provision's obligation to return the building to the condition it was at the time it took possession. K.P. Auto also argues that because it made repairs to the Leased Premises at its own expense before Hurricane Rita struck, TRP is only entitled to recover damages based on the Leased Premises condition when K.P. Auto took possession.

TRP points to the Management Agreements between it and K.P. Auto and the assignment of the Lease executed by ADG and K.P. Auto to argue K.P. Auto was obligated to make the repairs it made; therefore, the Leased Premises must be returned to the condition they were in when Hurricane Rita struck.

The Management Agreements between ADG and K.P. Auto also address repairs. The Agreement to Manage dated February 28, 2005, between ADG as "Seller" and K.P. Auto as "Buyer" provided, in pertinent part: "Any damages which occur to the building, furniture or fixtures or equipment during Buyer's management period shall be repaired by Buyer at Buyer's liability and expense, and Buyer shall indemnify and compensate Seller therefor." The Agreement to Manage was amended on May 18, 2005, by an Amendment to the Agreement to Manage. The Amendment contained the same provision quoted above, except it

16

obligated K.P. Auto as Manager to repair any damages to "the building" and required K.P. Auto to "indemnify and compensate Dealer [ADG]" for the damages.[5] These provisions required K.P. Auto to repair the building if it was damaged without reference to a particular condition at a particular time.

Considering these provisions of the two Management Agreements, we conclude that K.P. Auto had the obligation to repair "the building" at 2616 Ryan Street, Lake Charles after it was damaged by Hurricane Rita and that TRP must establish what damage occurred to the building in Hurricane Rita.

The assignment provided, in pertinent part:

> Landlord herein provides its consent to Assignee to remove the current used car building and to replace it with a new modular building. Assignor, at is [sic] expense and liability, may also install additional concrete to enlarge the current used car parking lot, and Assignor may make additional repairs to the main showroom, including replacement of carpet and tile, and the lowering of the roof and lighting which may entail repairs and maintenance to the current sprinkler system. All of these repairs, concreting and building replacement are to be done at Assignor's sole cost and expense and any repairs and maintenance must be accomplished following all appropriate building codes and laws. Furthermore, Landlord shall be obligated to paint the exterior of the building and repair the roof. Landlord must complete the painting and the roof repair within 120 days from the signing of the Act of Sale of the selected assets.

The only repairs this provision requires are painting the exterior of the building and repair of the roof, and TRP, as Landlord, not K.P. Auto, as Assignee, was obligated to perform those repairs. Furthermore, this provision clearly and unambiguously provides that the Assignor, which was ADG, not K.P. Auto, had the Landlord's permission to make the other mentioned repairs but was not obligated to make such repairs. Accordingly, this provision does not support

---

[5] These agreements do not specifically identify "the building" by location or address, but they do identify the business that is the subject of the agreements as being located at 2616 Ryan Street, Lake Charles.

TRP's argument that K.P. Auto was obligated to make repairs to the Leased Premises. The Lease also gave the Tenant the right, but no obligation, "to make minor improvements, alterations and additions, except those affecting the foundation or structure of the premises."

Under the terms of these provisions, K.P. Auto was authorized, but not obligated, to perform any repairs to the Leased Premises. Having considered these provisions and the close proximity of Hurricane Rita to the date K.P. Auto took possession of the Leased Premises, we find the Fire and Other Casualty provision governs. It is more specific than the Maintenance provision because it governs repairs necessitated by damage due to "fire, windstorm, or other casualty." Moreover, under the terms of the Assignment of Lease and the Lease, K.P. Auto accepted the Leased Premises "in an 'as is' and 'where is' basis, in their present condition, and assume[d] responsibility therefor." Furthermore, pursuant to the Maintenance provision, it was obligated to "maintain and keep in good repair all portions of the Leased Premises and the improvements located thereon."

With regard to its motion for summary judgment, K.P. Auto had the burden of proving that there is an absence of factual support for one or more elements essential to TRP's claims against it. We have determined that the trial court erred in excluding the extrajudicial statements made by K.P. Auto, its representatives, expert witnesses, and insurer and that TRP must prove the condition of the Leased Premises when they were damaged by Hurricane Rita. Our review of the extrajudicial statements excluded by the trial court show that genuine issues of material fact exist with regard to what the condition of the Leased Premises was when they were damaged in Hurricane Rita. Therefore, the trial court erred in K.P. Auto's motion.

***Did the trial court err in failing to grant partial summary judgment in favor of TRP?***

TRP argues the evidence it submitted in support of its motion for partial summary judgment is sufficient for us to award judgment in its favor and the trial court erred in denying its motion. Mr. Wiener's qualification as an expert, as well as his report and testimony, are the subject of a Motion in Limine that the trial court determined was moot in light of its rulings on the parties' motions for summary judgment. TRP had Mr. Wiener present at the hearing to testify in connection that with the Motion in Limine. Therefore, the Motion in Limine must be tried and decided by the trial court on remand. Accordingly, any issue to which Mr. Wiener's expert opinion might pertain is not properly before this court. In accordance with these conclusions, we have not considered his report or deposition testimony in conjunction with this appeal.

TRP's evidence in support of its motion for summary judgment does not establish the condition of the Leased Premises when damaged by Hurricane Rita, the repairs necessitated by Hurricane Rita, or repairs K.P. Auto must make to return the Leased Premises to that condition. The trial court did not err in denying it partial summary judgment.

## DISPOSITION

The trial court's grant of summary judgment in favor of K.P. Auto dismissing TRP's claims is reversed. The trial court's denial of TRP's motion for summary judgment is affirmed. Costs of this appeal are assessed evenly between the parties.

**AFFIRMED IN PART; REVERSED IN PART; AND REMANDED FOR FURTHER PROCEEDINGS.**

19